Todd D. Carpenter (CA Bar No. 234464)
**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel: (619) 762-1900
*tcarpenter@carlsonlynch.com*

Jeffrey D. Kaliel (CA Bar No. 238293)
Sophia G. Gold (CA Bar No. 307971)
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
Tel: (202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielpllc.com*

Hassan A. Zavareei (CA Bar No. 181547)
Andrea Gold (*pro hac vice to be filed*)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 973-0900
Fax: (202) 973-0950
*hzavareei@tzlegal.com*
*agold@tzlegal.com*

Annick M. Persinger (CA Bar No. 272996)
Tanya S. Koshy (CA Bar. No. 277095)
**TYCKO & ZAVAREEI LLP**
The Tower Building
1970 Broadway – Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
Facsimile: (510) 210-0571
*apersinger@tzlegal.com*

*Attorneys for Plaintiff and the Putative Classes*
*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ELIZABETH EIESS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>USAA FEDERAL SAVINGS BANK,<br><br>Defendant. | Case No. 3:19-cv-00108<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

Plaintiff Elizabeth Eiess ("Plaintiff"), on behalf of herself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1.   Plaintiff brings this action on behalf of herself and a class of all similarly situated consumers, and the general public with respect to injunctive relief, against Defendant USAA Federal Savings Bank ("USAA" or the "Bank"), arising from the assessment of multiple Non-Sufficient Funds Fees ("NSF Fees") on the same transaction, which is barred by the account contract and is deceptive.

2.   In violation of its contract and reasonable consumer understanding, USAA often charges more than one $29 NSF Fee on the *same transaction*, even though the contract states—and reasonable consumers understand—that the same transaction can only incur a *single* NSF Fee. These double and triple penalties crush accountholders already struggling to make ends meet.

3.   This practice works to catch accountholders—many of whom are struggling get by—in an increasingly devastating cycle of fees.

4.   Plaintiff, and other consumers, have been injured by USAA's improper practice.   On behalf of herself and the Classes, Plaintiff seeks damages, restitution and injunctive relief for USAA's breach of contract and violation of California consumer protection statutes.

5.   Plaintiff further seeks redress for USAA's misleading and deceptive misrepresentations regarding the assessment of multiple NSF Fees on the same transaction in its publicly available marketing materials, including its own account contracts, and for USAA's omission of material facts pertaining to that practice in its publicly available marketing materials, including its account contracts.

6.   Plaintiff and other consumers have been injured by USAA's breach of contract and violations of consumer protection statutes.

7.    In addition, USAA's deceptive scheme aimed at the general public continues to this day. USAA's account contracts (including the Deposit Agreement, Fee Schedule, and Online Banking Agreement) are publicly available online to all current and prospective accountholders. The general public relies on representations in these documents in making important financial decisions regarding with whom they would like to open a checking account. Consumers who have already opened accounts also rely on the misrepresentations and omissions in the publicly available account documents when making every day financial transactions.

8.    The Pew Charitable Trusts has emphasized the importance of transparent checking account fee disclosures for both comparison shopping for checking accounts and for effective fee avoidance:

> Bank accounts are an essential financial product, used by 9 in 10 American households, and need to be safe and transparent. Account agreements and fee schedules provide customers with account costs, terms, and conditions. Among the largest U.S. banks, however, the median length of checking account disclosure documents is 40 pages, and the information is presented in varied formats with inconsistent wording, making it difficult for consumers to easily find the information they need to comparison shop, avoid overdraft and other fees, and manage their money.

The Pew Trusts, "The Benefits of Uniform Checking Account Disclosures." Transparency is especially essential given that research has revealed that fees are the most important factor influencing consumers' selection of a new banking provider. *See* Ron Shevlin, "How Consumers Choose a Bank: A Tale of Two Surveys." Insight Vault, Cornerstone Advisors, 23 Aug. 2018, *available at* https://www.crnrstone.com/insightvault/2018/08/23/how-consumers-choose-a-bank-a-tale-of-two-surveys/.

9.    Members of the public considering opening a checking account have the right to accurate information regarding the checking accounts they are considering. Reasonable consumers would not agree to open USAA checking accounts if they were informed, for example, that they would incur multiple NSF fees on a single transaction.

CLASS ACTION COMPLAINT

10.     Plaintiff seeks injunctive relief on behalf of the general public in order to prevent USAA from continuing to make material misrepresentations and omissions in publicly available account documents, misrepresentations and omissions which prevent all California consumers from accessing truthful and transparent information regarding USAA's practices.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than USAA.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## PARTIES

13.     Plaintiff Eiess is a citizen of California who resides in American Canyon, CA.  She maintains a USAA checking account.

14.     Defendant USAA is a federal savings association with its headquarters and principal place of business located in San Antonio, TX.  Among other things, USAA is engaged in the business of providing retail banking services throughout California to consumers, including Plaintiff and members of the putative classes, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.     USAA ASSESSES TWO, THREE AND SOMETIMES MORE NSF FEES ON THE SAME TRANSACTION

15.     As a matter of policy and practice, USAA has programmed its systems to charge two, three, or even more NSF Fees on the same electronic transactions, when

those transactions are rejected for insufficient funds then re-submitted for payment over and over again.

16.    This abusive practice is not universal in the banking industry.  Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is submitted for payment multiple times.  Instead, they charge one NSF Fee even if a transaction is resubmitted for payment multiple times.

17.    Worse, USAA's Deposit Agreement never discloses this practice; to the contrary, it indicates it will <u>not</u> undertake this practice.

**A.    <u>The Purpose and Nature of Overdraft and NSF Fees</u>**

18.    When a bank rejects an attempted transaction on a checking account due to insufficient funds, it sends an electronic notification back to the merchant stating that the transaction was not approved.  USAA charges a $29 NSF Fee when it performs this action.  Because rejection is essentially cost-free, the $29 NSF is pure profit.

19.    The rejection of an attempted transaction provides zero benefit to the accountholder, as the CFPB has noted:

> An important consumer outcome of any overdraft program is the percentage of negative transactions that are paid (i.e., result in overdrafts) or returned unpaid (i.e., were NSFs). **Paying overdraft transactions may confer some benefit (in exchange for the associated fees and other costs) to consumers by helping them make timely payments and avoid late penalty fees and/or interest charges from a merchant or biller. In contrast, returning an item generally confers little benefit to the consumer (other than perhaps deterring future overdrafting and any subsequent consequences) and can result in an NSF fee as well as additional related fees, such as a returned check fee charged by the institution to whom the check was presented or a late fee charged by the entity to whom payment was due**. At the median, study banks paid into overdraft 83% of transactions that exceeded the available balance in 2011 and returned 17%.

*CFPB Study of Overdraft Programs*, CFPB (June 2013), at 26 (emphasis added), available at https://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf. Worse, multiple rejection and fee assessments on the same transaction not only provide no benefit to already-strapped accountholders, they devastate them.

**B.**   **Plaintiff's Experiences**

20.   On October 30, 2018, Plaintiff attempted a $358.83 payment on her Citibank credit card.

21.   USAA rejected payment of that transaction due to insufficient funds and charged Plaintiff a $29 NSF Fee for doing so.

22.   Three days later, on November 2, 2018, the same transaction was submitted for payment again, and again USAA rejected the transaction due to insufficient funds, and again charged Plaintiff a $29 NSF Fee.

23.   USAA expressly referred to this transaction on Plaintiff's bank statements as a "RETRY PAYMENT," indicating even USAA understood this transaction to be another iteration of the same authorization for payment.

24.   Another five days later, on November 7, 2018, the same transaction was submitted for payment yet again, and again USAA rejected the transaction due to insufficient funds and again charged Plaintiff a $29 NSF Fee for doing so.

25.   Again, USAA expressly referred to this transaction on Plaintiff's bank statements as a "RETRY PAYMENT," indicating even USAA understood this transaction to be another iteration of the same authorization for payment.

26.   In sum, *USAA charged Plaintiff $87 in fees to attempt to process a single $358.83 payment.*

27.   Plaintiff took no affirmative action to reinitiate or resubmit the transaction, which was submitted for payment automatically over and over again.

28.   Plaintiff understood the payment to Citibank be a single transaction, capable at most of receiving a single NSF or Overdraft (OD) Fee.

**C.**   **USAA Violates the Express Promises and Representations Made by USAA When It Charges More than One NSF Fee on the Same "Item"**

29.   USAA's account contract documents state that it will charge $12 per "item" that is returned due to insufficient funds.

CLASS ACTION COMPLAINT

30.     While the term "item" is not expressly defined, its usage throughout USAA's Deposit Agreement reveals that the term "item" must describe all iterations of a given instruction for transfer or payment from a checking or savings account.

31.     According to the USAA Deposit Agreement, attached hereto as Exhibit A:

Overdrafts and Insufficient Funds Fees

When you do not have enough available funds in your account to cover a check or other **item** (such as an in person withdrawal, ATM withdrawal, automatic payment, point-of-sale or debit card purchase, or other electronic transaction), FSB considers this to be a Nonsufficient Funds (NSF) item (insufficient funds item). FSB may, without notice to you and in its sole discretion, **either pay such items and overdraw your account, or decline or return such items unpaid**. In either case, **FSB may charge for each insufficient funds item** and for each overdraft, as set forth in the Service Fee Schedule for your account. If FSB pays insufficient funds items by overdrawing your account on one or more occasions, FSB is not obligated to continue doing so in the future, and may stop paying such items and return them unpaid without notice to you.

(emphasis added).[1]

32.     The Online Banking Agreement, attached hereto as Exhibit B, makes no reference whatsoever to fees for returned transactions:

Failed or Returned Transactions

In using the Service, you are requesting the Service to make payments for you from your Payment Account. If we are unable to complete the transaction for any reason associated with your Payment Account (for example, there are insufficient funds in your Payment Account to cover the transaction), the transaction will not be completed. In some instances, you will receive a return notice from the Service.

33.     USAA's Deposit Agreement, Fee Schedule, and Online Banking Agreement are all publicly available documents available online to all current and prospective accountholders. Consumers, and the general public, rely on these documents in making important financial decisions regarding to whom they would like to entrust their money.

_____

[1] USAA refers to itself as "FSB" in certain contractual documents.

CLASS ACTION COMPLAINT

34.    And according the Fee Schedule, attached hereto as Exhibit C, which is a part of the contractual terms governing a USAA account, a single $29 fee will be assessed for "checks and other withdrawals," but there is no hint that multiple fees can be charged for the same "checks and withdrawals":

> NON-SUFFICIENT FUNDS FEE (NSF FEE – ITEM RETURNED)
> Checks and other withdrawals.......................................................$29
> **Applies to checks and other withdrawals** from your account that FSB returns without paying due to non-sufficient funds.

35.    The same instruction for payment on an account cannot conceivably become a new "item" each time it is rejected for payment and then resubmitted, especially when—as here—Plaintiff took no action to resubmit them.

36.    There is zero indication anywhere in the account documents that the same "item," "check" or "other withdrawal" is eligible to incur *multiple* NSF or OD Fees. Instead, the Fee Schedule plainly states that only a single $29 NSF Fee will be assessed per item.

37.    Moreover, USAA uses singular terms to discuss the assessment of fees on transactions. For example, the Deposit Agreement states

> FSB may, without notice to you and in its sole discretion, either pay such items and overdraw your account, or decline or return such items unpaid. In either case, FSB may charge for each insufficient funds item and for each overdraft, as set forth in the Service Fee Schedule for your account.

38.    This is binary:  for a given transaction, USAA cannot do the same thing more than once.   In fact, USAA expressly states that USAA may charge for each insufficient funds item and for each overdraft, not multiple times for each item or overdraft.

39.    In sum, USAA promises that *one* $29 NSF or OD Fee will be assessed per item, "check or other withdrawal," and these terms must mean all iterations of the same instruction for payment.  As such, USAA breached the contract when it charged more than one fee per item.

8

CLASS ACTION COMPLAINT

40.    Consistent with express representations in the contract, reasonable consumers understand any given authorization for payment to be one, singular "item," "check or other withdrawal," as that term is used in USAA's contract documents. No reasonable consumer would understand a single check, for example, to be multiple "items."

41.    Upon information and belief, USAA has this same understanding in practice, since its systems code transactions in a way that alerts USAA when the same item or transaction is being re-submitted for payment, viz., as "RETRY PAYMENTS."

42.    The contract documents bar USAA from assessing multiple NSF Fees on the same item.

43.    Lastly, the contract documents never state that one transaction or item can incur multiple NSF Fees, and never discloses that one transaction can count as multiple "items" for purposes of fee assessment.

44.    USAA's misrepresentations and omissions are ongoing, and negatively affect not only current accountholders' ability to manage their funds, but also deceive members of the general public who have no choice but to rely on USAA's publicly available statements in making important decisions regarding who to bank with, what kinds of accounts to open, and what transactions to make. Current and prospective bank customers have a right to know what they can expect from the institutions they entrust with their money, especially if what they can expect are multiple NSF Fees on a single transaction.

45.    Banks like USAA that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks that do engage in this abusive practice disclose it expressly to their accountholders—USAA did not.

46.    For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as USAA, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we

charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

47.    First Hawaiian Bank engages in the same abusive practice as Defendant, but at least currently discloses it in its Online Banking Agreement, in all capital letters, as follows:

YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

48.    Klein Bank similarly states in its Online Banking Agreement:

[W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

49.    USAA provides no such disclosure, and in so doing, deceives its accountholders.

**D.    USAA Abuses Any Discretion**

50.    Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations. That means that USAA is prohibited from exercising its discretion to enrich itself and gouge its customers. Instead of exercising any discretion it may have in good faith and consistent with Plaintiff's reasonable expectations, USAA abuses that discretion to take

money out of Plaintiff's account without her permission and contrary to her reasonable expectation that she will not be charged multiple fees for the same transaction.

51.   To the extent the account documents do not explicitly bar the policy described above, USAA exploits any contractual discretion to the detriment of accountholders and breaches good faith and fair dealing when it uses the policy. The allegations that USAA has contractual discretion are made in the alternative to the allegations that the NSF Fee practices are expressly in breach of the account contract documents.

52.   As set forth in the Deposit Agreement, "FSB **may** charge for each insufficient funds item and for each overdraft, as set forth in the Service Fee Schedule for your account."  Given that when an "item" is re-submitted for payment a second, third, or additional times, USAA has *already* assessed a $29 NSF Fee on that item, USAA could simply not charge another $29 NSF Fee on the same item when a customer's account lacks sufficient funds. This would result in a single NSF fee, rather than two or more NSF fees. By exercising its discretion in its own favor—and to the prejudice and expense of Plaintiff and other customers, USAA abuses the power it has and acts contrary to its customers' reasonable expectations under the Deposit Agreement. This is a breach of USAA's implied covenant to engage in fair dealing and act in good faith.

53.   For example, it was bad faith and totally outside Plaintiff's reasonable expectations for USAA to abuse its discretion to assess $87 in fees for a single $358.83 credit card payment.

54.   USAA uses its discretion to interpret "item" and "check or other withdrawal" in an unreasonable way that violates common sense and reasonable consumer expectations.  USAA uses its contractual discretion to set the meaning of that term to choose a meaning that directly causes more NSF Fees.

55.     Moreover, USAA grants itself discretion to refuse to re-submit transactions that are initially rejected.  It abuses that discretion to repeatedly resubmit transactions and to charge fees each time.

56.     Additionally, USAA grants itself discretion to charge—or not to charge— an NSF Fee on a given transaction.  When it charges more than one NSF Fee on a given item or transaction, USAA behaves in bad faith and contradicts reasonable consumer expectations.

## CLASS ALLEGATIONS

57.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

58.     The proposed classes are defined as:

> All USAA checking accountholders in the United States who, during the applicable statute of limitations, were charged multiple NSF Fees on the same item (the "National Class").

> All USAA checking accountholders in California who, during the applicable statute of limitations, were charged multiple NSF Fees on the same item (the "California Subclass").

The classes are collectively referred to as the "Classes."

59.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

60.     Excluded from the Classes are USAA, its parents, subsidiaries, affiliates, officers and directors, any entity in which USAA has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and any member of such judge's staff and immediate family.

CLASS ACTION COMPLAINT

61.    The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to USAA's records.

62.    The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, was charged improper NSF Fees. The representative Plaintiff, like all Class members, has been damaged by USAA's misconduct in that she paid improper NSF Fees.  Furthermore, the factual basis of USAA's misconduct is common to all Class members and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

63.    There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

64.    Among the questions of law and fact common to the Classes are whether USAA:

        a.    Charged multiple NSF Fees on a single transaction;

        b.    Breached its contract with consumers by charging multiple NSF Fees on a single transaction;

        c.    Breached the covenant of good faith and fair dealing by charging multiple NSF Fees on a single transaction;

        d.    Violated California consumer protection law by charging multiple NSF Fees on a single transaction;

        e.    Whether Plaintiff and the Classes were damaged by USAA's conduct and if so, the proper measure of damages; and

        f.    Whether USAA misrepresented and omitted material information regarding its fee practices in publicly available account documents.

65.    Plaintiff is committed to the vigorous prosecution of this action and has

retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

66.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of USAA, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and USAA's misconduct will proceed without remedy.

67.    Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## DESCRIPTION OF PUBLIC INJUNCTIONS SOUGHT

68.    Plaintiff is seeking injunctions on behalf of herself, the putative classes, and the public, prohibiting USAA from making material omissions and misrepresentations to the public as to its multiple NSF fee policy alleged in this Complaint.  Along with Plaintiff's prayers for monetary relief, the injunctive relief sought is essential to eradicating USAA's deceptive scheme.  In the absence of an injunction, USAA will remain free to continue to mislead members of the public regarding its fee practices, causing them to incur the same unexpected NSF fees

1   Plaintiff and other accountholders experienced.

2       69.     Fees are one of the most important factors that consumers take into

3   account when deciding whether to open a checking account, and which financial

4   institution to bank with. The public has the right to a transparent marketplace in which

5   banks are open and honest about the number, nature, and amount of fees they charge,

6   and the circumstances under which those fees are assessed.

7       70.     The injunctive relief sought by Plaintiff will protect the public from

8   USAA's deceitful marketing practices which lure customers in by misunderstanding

9   the amount and frequency it assesses NSF Fees on a single transaction. It will prevent

10  USAA from distorting the marketplace by representing that it charges fewer fees than

11  it actually does.  It will also serve as a deterrent to other bank that may consider

12  unlawfully charging NSF Fees.

13      71.     Specifically, USAA misleads consumers as to the number of NSF Fees it

14  assesses on a given transaction. Plaintiff seeks to enjoin USAA from misrepresenting

15  and/or omitting this material and accurate information in the documents that it makes

16  available to the public.

### FIRST CLAIM FOR RELIEF
### Breach of Contract Including Breach of the
### Covenant of Good Faith and Fair Dealing

**(On Behalf of the Classes)**

20      72.     Plaintiff incorporates by reference each of the allegations set forth in the

21  preceding paragraphs.

22      73.     Plaintiff (and fellow members of the Classes) and USAA have contracted

23  for bank account deposit and checking services, as embodied in USAA's Deposit

24  Agreement and related documentation, including USAA's Online Banking Agreement

25  and Fee Schedule.

26      74.     For the reasons alleged herein, the contract documents bar USAA from

27  assessing multiple NSF Fees on the same item or transaction.

28

75.    USAA charged Plaintiff and members of the Classes multiple NSF Fees on the same transaction.

76.    Therefore, USAA breached the terms of the Deposit Agreement and related documentation, with consumers by charging multiple NSF Fees on the same transaction.

77.    Additionally, under the laws of each state where USAA does business and has customers, good faith is an element of every contract. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

78.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

79.    USAA has breached the covenant of good faith and fair dealing in the Account Agreement through its NSF Fee policies and practices as alleged herein.

80.    Instead of exercising that discretion in good faith and consistent with Plaintiff's reasonable expectations, USAA abuses that discretion to assess NSF fees and take money out of Plaintiff's account without her permission and contrary to her reasonable expectations that she will not be charged multiple NSF Fees for the same transaction. Specifically, USAA regularly (a) resubmits previously declined

transactions, even when it knows a customer's account lacks sufficient funds, and (b) charges NSF Fees upon resubmission of previously declined transactions.

81.    USAA further breaches the covenant of good faith and fair dealing by charging more than one NSF Fee on a single transaction.

82.    By exercising its discretion to enrich itself by gouging its consumers, USAA consciously and deliberately frustrates the agreed common purposes of the contract and disappoints the reasonable expectations of Plaintiff and members of the Classes, thereby depriving them of the benefit of their bargain.

83.    In addition, USAA grants itself discretion to charge—or not to charge— an NSF Fee on a given transaction.  When it charges more than one NSF on a given transaction, USAA breaches the covenant of good faith and fair dealing.

84.    Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

85.    Plaintiff and members of the Classes have sustained damages as a result of USAA's breach of contract and breach of the covenant of good faith and fair dealing.

## SECOND CLAIM FOR RELIEF
### Violation of California Unfair Competition Law
### Business and Professions Code § 17200
### (On Behalf of the California Subclass)

86.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

87.    USAA's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, *et seq*.

88.    The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.  In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

89.    By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be

treated as unfair competition that is independently actionable, and sweeps within its scope acts and practices not specifically proscribed by any other law.

90.     The UCL expressly provides for injunctive relief, and also contains provisions denoting its public purpose. A claim for injunctive relief under the UCL is brought by a plaintiff acting in the capacity of a private attorney general. Although the private litigant controls the litigation of an unfair competition claim, the private litigant is not entitled to recover compensatory damages for his own benefit, but only disgorgement of profits made by the defendant through unfair or deceptive practices in violation of the statutory scheme or restitution to victims of the unfair competition.

91.     As further alleged herein, USAA's conduct violates the UCL's "unfair" prong insofar as USAA charges multiple NSF Fees on a single transaction.

92.     USAA's conduct was not motivated by any legitimate business or economic need or rationale. The harm and adverse impact of USAA's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives.

93.     The harm to Plaintiff and members of the California Subclass arising from USAA's unfair practices relating to the imposition of the improper fees outweighs the utility, if any, of those practices.

94.     USAA's unfair business practices as alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiff, members of the California Subclass, and the general public.

95.     USAA's conduct was substantially injurious to consumers in that they have been forced to pay improper, abusive, and/or unconscionable NSF fees.

96.     Moreover, USAA committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when it affirmatively and knowingly misrepresented its NSF Fee practices. Such representations misled the Plaintiff and are likely to mislead the public.

97.    Specifically, Plaintiff relied on USAA's misrepresentations and material omission regarding its NSF Fee practices. Specifically, Plaintiff had no idea she would be charged multiple NSF Fees for a single transaction. If Plaintiff knew she would be charged multiple NSF Fees for a single transaction, she would have switched banks to a bank that did not use this practice. Such misrepresentations and omissions misled Plaintiff and are likely to mislead the public.  Plaintiff seeks to enjoin USAA from misrepresenting and/or omitting this material and accurate information in the documents that it makes available to existing accountholders and the general public who might consider banking with USAA.

98.    Plaintiff and members of the California Subclass relied on USAA's misrepresentations and omissions in that Plaintiff received and reviewed the materials provided by USAA, and like any reasonable customer understood these documents to mean they would not be charged more than one NSF Fee on a single transaction.  Had Plaintiff and others been informed in any of the documents provided by USAA that they would be subject to these practices, they would have been able to weigh the convenience and benefits in engaging in transactions against the cost of the multiple NSF Fees charged by USAA.

99.    Moreover, USAA committed unlawful business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it violated the CLRA, as alleged herein.

100.    As a result of USAA's violations of the UCL, Plaintiff and members of the California Subclass have paid, and/or will continue to pay NSF Fees and thereby have suffered and will continue to suffer actual damages.

101.    Absent injunctive and public injunctive relief prohibiting USAA from misrepresenting and omitting material information concerning its NSF Fee policy at issue in this lawsuit, Plaintiff and other existing accountholders, and the general public will be exposed to USAA's conduct violative of the UCL.

**THIRD CLAIM FOR RELIEF**
**Consumers Legal Remedies Act (CLRA) Cal. Civ. Code § 1750 *et seq.***
**(On Behalf of the California Subclass)**

102.  Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

103.  Plaintiff and each of the California Subclass members are "consumers" within the meaning of Civil Code § 1761(d).

104.  Plaintiff and California Subclass members engaged in "transactions" with USAA within the meaning of Civil Code § 1761(e).

105.  USAA's provision of electronic payments services are "services" within the meaning of §§ 1761(b).

106.  USAA's actions, representations, and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods or services to any consumer.

107.  The CLRA expressly provides for injunctive relief, and also contains provisions denoting its public purpose.  A claim for injunctive relief under the CLRA is brought by a plaintiff acting in the capacity of a private attorney general.

108.  As detailed above, USAA has engaged, and continues to engage, in unfair methods of competition and has undertaken unfair or deceptive acts or practices in violation of the CLRA by, *inter alia*: charging multiple NSF Fees on the same transaction.

109.  USAA made material misrepresentations and/or omissions concerning each of these practices upon which Plaintiff relied.

110.  Specifically, Plaintiff relied on USAA's misrepresentations and material omission regarding its NSF Fee practices in its Account Agreement and Fee Schedule. Such misrepresentations and omissions misled Plaintiff and are likely to mislead the public.  Plaintiff seeks to enjoin USAA from misrepresenting and/or omitting this material and accurate information in the documents that it makes available to the public.

111.   Plaintiff and members of the California Subclass relied on USAA's misrepresentations and omissions in that Plaintiff received and reviewed the materials provided by USAA, and like any reasonable customer understood these documents to mean she would not be charged more than one NSF Fee on a single transaction.  Had Plaintiff been informed in any of the documents provided by USAA that she would be subject to these practices, she would have been able to weigh the convenience and benefits in engaging in transactions against the cost of the multiple NSF Fees charged by USAA.

112.   Plaintiff and the California Subclass members are injured in fact and lost money as a direct and proximate result of USAA's unfair methods of competition and/or deceptive acts or practices in that they incurred NSF Fees that were improper.

113.   Plaintiff and the California Subclass members seek declaratory relief, injunctive relief, and other relief allowable under Bus. & Prof. Code § 17203, including but not limited to enjoining USAA from continuing to engage in the unfair, unlawful, and fraudulent conduct alleged herein.

114.   Pursuant to Section 1782(d) of the CLRA, Plaintiff reserves the right to amend this Complaint to include a request for damages under the CLRA pursuant to Section 1782(a) of the CLRA within thirty (30) days of providing the required notice.

115.   Plaintiff's affidavit stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(c) is attached hereto.

116.   As a result of USAA's violations of the CLRA, Plaintiff and members of the California Subclass have paid, and/or will continue to pay NSF Fees and thereby have suffered and will continue to suffer actual damages.

117.   Absent injunctive and public injunctive relief prohibiting USAA from misrepresenting and omitting material information concerning its NSF Fee policy at issue in this lawsuit, Plaintiff and other existing accountholders, and the general public will be exposed to USAA's conduct violative of the CLRA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.     An order on behalf of the general public enjoining USAA from continuing to misrepresent or omit material information pertaining to its multiple NSF Fee policy in its publicly available account documents and marketing materials such as its "Deposit Agreement," "Fee Schedule," and "Online Banking Agreement";

2.     Declaring USAA's NSF Fee policies and practices to be wrongful, unfair and unconscionable, as well as fraudulent;

3.     Restitution of all relevant fees paid to USAA by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

4.     Disgorgement of the ill-gotten gains derived by USAA from its misconduct;

5.     Actual damages in an amount according to proof;

6.     Statutory damages as permitted by law;

7.     Punitive and exemplary damages;

8.     Pre-judgment interest at the maximum rate permitted by applicable law;

9.     Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

10.     Such other relief as this Court deems just and proper.

///

///

///

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.


Dated:  January 8, 2019

Respectfully submitted,


/s/ *Todd D. Carpenter*

Todd D. Carpenter (CA Bar No. 234464)
**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel: (619) 762-1900
*tcarpenter@carlsonlynch.com*

Jeffrey D. Kaliel (CA Bar No. 238293)
Sophia G. Gold (CA Bar No. 307971)
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
Tel:  (202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielpllc.com*

Hassan A. Zavareei (CA Bar No. 181547)
Andrea Gold (pro hac vice to be filed)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 973-0900
Fax: (202) 973-0950
*hzavareei@tzlegal.com*
*agold@tzlegal.com*

Annick M. Persinger (CA Bar No. 272996)
Tanya S. Koshy (CA Bar. No. 277095)
**TYCKO & ZAVAREEI LLP**
The Tower Building
1970 Broadway – Suite 1070
Oakland, CA 94612
Tel: (510) 254-6808
Fax: (510) 210-0571
*apersinger@tzlegal.com*
*tkoshy@tzlegal.com*

Jeff Ostrow (*pro hac vice to be filed*)
Jonathan M. Streisfeld (*pro hac vice to be filed*)
**KOPELOWITZ OSTROW FERGUSON**

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WEISELBERG GILBERT**
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
Fax: (954) 525-4300
*ostrow@kolawyers.com*
*streisfeld@kolawyers.com*

*Attorneys for Plaintiff and the Putative Classes*

CLASS ACTION COMPLAINT