Elspeth V. Hansen (SBN 292193)
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 331-2000
Facsimile: (650) 331-2060
Email: ehansen@mayerbrown.com

Megan S. Webster (*pro hac vice*)
Thomas V. Panoff (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711
Email: megan.webster@mayerbrown.com
        tpanoff@mayerbrown.com

Attorneys for Defendant USAA Federal
Savings Bank

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELIZABETH EIESS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>USAA FEDERAL SAVINGS BANK,<br><br>Defendant. | CASE NO. 3:19-cv-00108-EMC<br><br>**NOTICE OF MOTION AND RENEWED MOTION OF USAA FEDERAL SAVINGS BANK TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  July 11, 2019<br>Time:  1:30 p.m.<br>Judge:  Hon. Edward M. Chen |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 11, 2019 at 1:30 p.m., or as soon thereafter as this matter may be heard before the Hon. Edward M. Chen in Courtroom 5 of the above-mentioned court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant USAA Federal Savings Bank ("USAA FSB") will, and hereby does, move pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), for an Order compelling Plaintiff Elizabeth Eiess ("Plaintiff") to arbitrate her claims in this action on an individual, non-class basis, and to stay the instant action.

This Motion is made on the grounds that a valid, enforceable, and irrevocable agreement to arbitrate exists between the parties; that the agreement encompasses Plaintiff's claims; that, pursuant to the FAA, upon election by either party, Plaintiff must arbitrate her claims as required by the arbitration agreement in Plaintiff's account agreement; and that the instant action should be stayed pending completion of the arbitration.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all papers and pleadings on file in this action, and upon such other and further evidence and argument as may be presented to the Court in connection with this Motion.

[*Signature block on following page*]

1   Date: May 13, 2019                          Respectfully submitted,

2

3                                               MAYER BROWN LLP

4                                               By: ___/s/ Thomas V. Panoff___
                                                       Thomas V. Panoff
5
                                                Elspeth Hansen (SBN 292193)
6                                               MAYER BROWN LLP
                                                Two Palo Alto Square, Suite 300
7                                               3000 El Camino Real
                                                Palo Alto, CA 94306
8                                               Telephone: (650) 331-2000
                                                Facsimile: (650) 331-2060
9                                               Email: ehansen@mayerbrown.com

10                                              Megan S. Webster (*pro hac vice*)
                                                Thomas V. Panoff ((*pro hac vice*)
11                                              MAYER BROWN LLP
                                                71 South Wacker Drive
12                                              Chicago, IL  60606
                                                Telephone:  (312) 782-0600
13                                              Facsimile:  (312) 701-7711
                                                Email: megan.webster@mayerbrown.com
14                                                     tpanoff@mayerbrown.com

15                                              *Attorneys for Defendant*
                                                *USAA Federal Savings Bank*
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................................. 3

ARGUMENT ..................................................................................................................... 5

I.  The Arbitration Agreement Is Valid and Enforceable ...................................... 7

    A.  Plaintiff's Claims Are Governed By Texas Law. ................................... 7

    B.  The Arbitration Agreement Is Valid And Enforceable Even If California Law And The *McGill* Rule Apply. .......................................................... 10

        1.  Plaintiff does not seek public injunctive relief. ......................... 10

        2.  *McGill* is preempted by the FAA. ............................................. 13

            a.  *McGill* interferes with fundamental attributes of arbitration. ....... 13

            b.  *Roberts* does not support denial of the motion to compel. ............ 15

II.  At A Minimum, The Court Should Compel Arbitration On Liability Before Addressing The Propriety Of Public Injunctive Relief. ................................... 18

CONCLUSION ................................................................................................................. 19

1

# <u>TABLE OF AUTHORITIES</u>

2

3                                                                                    **Page(s)**

4

**Cases**

5

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
   2013 WL 12142655 (C.D. Cal. Mar. 6, 2013) ........................................................................15

6

7   *Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ................................................................................................................18

8   *Amtax Holdings 463, LLC v. KDF Communities-Hallmark, LLC*,
   2018 WL 4743386 (C.D. Cal. Jan. 9, 2018) ...........................................................................19

9

10  *AT&T Mobility LLC v. Bernardi*,
   2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) .........................................................................14

11

12  *AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) .................................................................................................7, 13, 16, 17

13

14  *AT&T Mobility LLC v. Gonnello*,
   2011 WL 4716617 (S.D.N.Y. Oct. 7, 2011) ...........................................................................14

15  *Aviles v. Quik Pick Exp., LLC*,
   703 F. App'x 631 (9th Cir. 2017) ...........................................................................................18

16

17  *Bell-Sparrow v. SFG*Proschoicebeauty*,
   2019 WL 1201835 (N.D. Cal. Mar. 14, 2019) ........................................................................10

18  *Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) (AAA rules) ...........................................................................19

19

20  *Broughton v. Cigna Healthplans of Cal.*,
   988 P.2d 67 (Cal. 1999) ...........................................................................................................15

21

22  *Cisneros v. U.D. Registry, Inc.*,
   46 Cal. Rptr. 2d 233 (Ct. App. 1995) ......................................................................................14

23  *Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) .....................................................................................................................6

24

25  *Clark v. City of Lakewood*,
   259 F.3d 996 (9th Cir. 2001) ...................................................................................................12

26

27  *Coneff v. AT&T Corp.*,
   673 F.3d 1155 (9th Cir. 2012) .................................................................................................13

28

*Croucier v. Credit One Bank, N.A.*,
   2018 WL 2836889 (S.D. Cal. Jun. 11, 2018)........................................................12

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ................................................................................................14

*Epic Systems Corp. v. Lewis*
   138 S. Ct. 1612 (2018) ..................................................................................... *passim*

*Ferguson v. Corinthian Colls., Inc.*,
   733 F.3d 928 (9th Cir. 2013).............................................................................18, 19

*Frenzel v. AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) ......................................................................9

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*,
   528 U.S. 167 (2000)................................................................................................12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ...............................................................................................6

*Johnson v. JP Morgan Chase Bank, N.A.*,
   2018 WL 4726042 (C.D. Cal. Sept. 18, 2018)..................................................10, 11

*Kilgore v. KeyBank, N.A.*,
   718 F.3d 1052 (9th Cir. 2013) (en banc)............................................................6, 10

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
   137 S. Ct. 1421 (2017) ...........................................................................................13

*Kraus v. Trinity Mgmt. Servs., Inc.*,
   999 P.2d 718 (Cal. 2000) .......................................................................................17

*Lamps Plus, Inc. v. Varela*
   2019 WL 1780275 (U.S. Apr. 24, 2019) ...........................................2, 13, 16, 17

*Lezell v. USAA Sav. Bank*,
   2016 WL 1212368 (E.D.N.Y. Mar. 28, 2016) .........................................................6

*McGill v. Citibank, N.A.*,
   393 P.3d 85 (Cal. 2017) ................................................................................. *passim*

*McGovern v. U.S. Bank, N.A.*,
   362 F. Supp. 3d 850 (S.D. Cal. Jan. 25, 2019).............................................. *passim*

*Medimatch, Inc. v. Lucent Techs., Inc.*,
   120 F. Supp. 2d 842 (N.D. Cal. 2000) ....................................................................9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)................................................................................................6

-iii-

*N. Plains Res. Council v. Lujan*,
   874 F.2d 661 (9th Cir. 1989)................................................................................12

*Nedlloyd Lines B.V. v. Super. Ct.*,
   834 P.2d 1148 (Cal. 1992) ...................................................................................8

*Palmer v. Stassinos*,
   348 F. Supp. 2d 1070 (N.D. Cal. 2004) .............................................................12

*Pokorny v. Quixtar, Inc.*,
   601 F.3d 987 (9th Cir. 2010).................................................................................7

*Prudential Secs., Inc. v. Marshall*,
   909 S.W.2d 896 (Tex. 1995)..................................................................................9

*Rappley v. Portfolio Recovery Assocs., LLC*,
   2017 WL 3835259 (C.D. Cal. Aug. 24, 2017)......................................8, 9, 10, 11

*Roberts v. AT&T Mobility LLC*,
   2018 WL 1317346 (N.D. Cal. Mar. 14, 2018).............................................. *passim*

*Sakkab v. Luxottica Retail N. Am., Inc.*,
   803 F.3d 425 (9th Cir. 2015)................................................................15, 16, 17

*Saunders v. USAA Life Ins. Co.*,
   71 F. Supp. 3d 1058 (N.D. Cal. 2014) ..................................................................3

*Varela v. Lamps Plus, Inc.*,
   701 F. App'x 670 (9th Cir. 2017) .......................................................................16

*Washington Mut. Bank, FA v. Super. Ct.*,
   15 P.3d 1071 (Cal. 2001) ...................................................................................8, 9

*Wiseman v. Tesla, Inc.*,
   2017 WL 7058142 (C.D. Cal. Sept. 12, 2017).....................................................18

*Wong v. Tenneco*
   702 P.2d 570 (Cal. 1985) .......................................................................................9

*Wright v. Sirius XM Radio, Inc.*,
   2017 WL 4676580 (C.D. Cal. Jun. 1, 2017) .......................................................10

**Statutes**

9 U.S.C. § 2......................................................................................................7, 14

9 U.S.C. § 3..............................................................................................................6

28 U.S.C. § 1404(a) ................................................................................................3

**Other Authorities**

Restatement (Second) of Conflict of Laws § 187 ........................................................................8, 9

WILLIAM L. STERN, RUTTER BUSINESS & PROFESSIONS CODE SECTION 17200
    PRACTICE § 7:38 (Supp. 2018) ...............................................................................................14

# MEMORANDUM OF POINTS AND AUTHORITIES[1]

Plaintiff Elizabeth Eiess ("Plaintiff") has a checking account with USAA Federal Savings Bank ("USAA FSB"). Her First Amended Class Action Complaint ("FAC") alleges that USAA FSB improperly charged her multiple non-sufficient funds ("NSF") fees for what she contends was a single transaction. On behalf of putative nationwide and California classes of USAA FSB checking accountholders, Plaintiff brings four causes of action: (1) breach of contract; (2) violation of the California Unfair Competition Law ("UCL"); (3) violation of the California Consumer Legal Remedies Act ("CLRA"); and, in the alternative to the contract claim, (4) unjust enrichment.

The FAC fails to state a claim against USAA FSB for numerous reasons. But regardless of the merits of her claims (or lack thereof), this Court is not the forum to adjudicate them. In her Deposit Agreement with USAA FSB, Plaintiff agreed to arbitrate the dispute at issue here on an individual basis. Her claims—based on the assertion that USAA FSB impermissibly assessed NSF fees—indisputably fall within the broad scope of the agreed-to arbitration provision. Under binding federal law, Plaintiff's arbitration agreement must be enforced according to its terms.

USAA FSB recognizes that in *Roberts v. AT&T Mobility LLC*, 2018 WL 1317346 (N.D. Cal. Mar. 14, 2018), this Court held that *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), precludes enforcement of an arbitration provision that waives a plaintiff's right to seek a so-called "public injunction." *Roberts* and *McGill* do not preclude enforcement of Plaintiff's arbitration agreement for multiple reasons.[2]

---

[1]     On February 17, 2019, pursuant to the parties' stipulation, the Court stayed deadlines to answer or otherwise respond to the Complaint pending the resolution of USAA FSB's motion to compel arbitration. *See* Dkt. 22. After USAA FSB moved to compel arbitration (Dkt. 25), the parties stipulated to continue briefing on the motion so that Plaintiff could amend her pleading. Dkt. 27. On April 12, 2019, Plaintiff filed the First Amended Complaint. Dkt. 31 ("FAC") and the Court approved a stipulated briefing schedule for the renewed motion to compel. Dkt. 30.

[2]     As the Court is aware, the *Roberts* decision is now pending on appeal. In addition, several other cases presenting the question of whether the FAA preempts *McGill* were recently argued in the Ninth Circuit. *See Blair v. Rent-A-Center*, No. 17-17221; *McArdle v. AT&T Mobility LLC*, No. 17-17246; *Tillage v. Comcast Corp.*, No. 18-15288.

1    **First**, while *McGill* states a rule of California law, here the parties contracted for the

2    application of Texas law, which recognizes no "public injunction" exception to the enforceability

3    of arbitration agreements. California has a strong policy in favor of enforcing contractual choice-

4    of-law provisions. The choice-of-law provision to which Plaintiff agreed should be enforced

5    according to its terms.

6    **Second**, even if arbitrability should be decided under California law (which USAA FSB

7    disputes), *McGill* is not applicable because Plaintiff does not actually seek public injunctive relief.

8    A public injunction is one which benefits the plaintiff only incidentally as a member of the general

9    public. *McGill*, 393 P.3d at 89-90. But the relief Plaintiff seeks is directed at her personally or to

10   other USAA FSB checking accountholders similarly situated. That is not *public* injunctive relief.

11   Merely incanting a request for a "public injunction," as Plaintiff attempts to do here, is not enough

12   to avoid a binding arbitration clause.

13   **Third**, even if the Court deems Plaintiff to have adequately pleaded a claim for public

14   injunctive relief, USAA FSB respectfully submits that *Roberts* is inapplicable. Since the Court

15   issued the *Roberts* opinion, the U.S. Supreme Court has issued two major decisions on the

16   enforceability of arbitration clauses. These intervening decisions call *Roberts*'s underpinnings into

17   question. In *Epic Systems Corp. v. Lewis*, the Supreme Court held that a state-law rule "seeking to

18   declare individualized arbitration proceedings off limits" is squarely foreclosed by the Federal

19   Arbitration Act. 138 S. Ct. 1612, 1623 (2018). And in *Lamps Plus, Inc. v. Varela*, the Supreme

20   Court reiterated that the FAA preempts California laws that interfere with "fundamental attributes

21   of arbitration"— regardless of whether the law disfavors arbitration "by name or by more subtle

22   methods." –2019 WL 1780275, at *7 (U.S. Apr. 24, 2019). *Epic* and *Lamps Plus* demonstrate that

23   *McGill*'s purportedly neutral rule, which would also interfere with traditional individualized

24   arbitration, is similarly preempted under the FAA. Indeed, earlier this year, a court in the Southern

25   District of California concluded in light of *Epic* that the *McGill* rule was preempted for just this

26   reason. *See McGovern v. U.S. Bank, N.A.*, 362 F. Supp. 3d 850, 863-64 (S.D. Cal. Jan. 25, 2019).

27   **Finally**, this case is distinguishable from *Roberts* in a significant respect. The Court

28   understood the agreement in *Roberts* to provide that the entire arbitration provision was null and

-2-

void in the event that the contract's restriction on the arbitrator's power to award declaratory or injunctive relief was deemed unenforceable. By contrast, nothing prevents the Court from severing a supposedly unenforceable restriction on public injunctive relief from the contract at issue in this case. Accordingly, even if *McGill* applied here, the appropriate course would be to compel arbitration on the merits of Plaintiff's non-public injunctive relief claims and reserve the question of public injunctive relief (if any) until after the arbitrator has rendered a decision.

For these reasons, the Court should stay this case and compel Plaintiff to arbitrate her claims on an individual basis, as she agreed to do by opening and continuing to use her account subject to the terms of the Deposit Agreement.[3]

## BACKGROUND

### A.    Plaintiff's Allegations

Plaintiff is a California resident and USAA FSB checking account customer. FAC ¶ 13. Her claims in this case stem from an October 30, 2018 "Citibank credit card" transaction (*id.* ¶ 21)—presumably an attempt to pay her Citibank credit card bill via a transfer from her USAA FSB checking account. Plaintiff alleges that USAA FSB rejected payment of that transaction and charged her a $29 NSF fee. *Id.* ¶ 22. Three days later, on November 2, 2018, Plaintiff alleges that the transaction was resubmitted for payment and that, when it was declined, USAA FSB charged her another NSF fee. *Id.* ¶ 23. Finally, five days after the first resubmission, the October 30 transaction allegedly was resubmitted a second time and triggered another NSF fee. *Id.* ¶ 25.

Plaintiff does not challenge the initial $29 NSF fee incurred on October 30, 2018. She claims only that USAA FSB's account disclosures—specifically, the USAA Federal Savings Bank Depository Agreement and Disclosures ("Deposit Agreement" or "Agreement"), Online Banking Agreement, and Fee Schedule, attached to the FAC as Exhibits A, B, and C, respectively—either

---

[3]    In the event that the Court does not compel arbitration, USAA FSB anticipates filing a motion pursuant to 28 U.S.C. § 1404(a) to transfer venue to the U.S. District Court for the Western District of Texas, where USAA FSB maintains its principal place of business. *See, e.g.*, *Saunders v. USAA Life Ins. Co.*, 71 F. Supp. 3d 1058, 1061 (N.D. Cal. 2014) (Davila, J.) (transferring case to the Western District of Texas pursuant to § 1404(a) due to the fact that USAA FSB's sister entity, USAA Life Insurance Company, had "little connection with California outside the presence of policyholders in this state").

prohibited or failed to give her notice of USAA FSB's purported practice of charging multiple NSF fees for a single transaction. *Id.* ¶¶ 29-44. She further alleges that a handful of other banks provide disclosures regarding this practice, but that USAA FSB does not and thus supposedly "deceives its accountholders." *Id.* ¶¶ 45-49. Other than attaching the documents, Plaintiff provides virtually no detail regarding the purportedly misleading disclosures she received. She fails to allege when she became a USAA FSB customer, where she was domiciled at the time, whether she received any other representations in connection with these documents, or when and how she received the purportedly misleading representations. She does, however, allege that she has been a California citizen and resident since 2014, an allegation not present in her original pleading. *Id.* ¶ 20.

Based on these allegations, Plaintiff brings claims for: (1) breach of contract and the covenant of good faith and fair dealing (*id.* ¶¶ 74-87); (2) unfair business acts or practices under the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.* (*id.* ¶¶ 88-103); (3) relief under the CLRA, Cal. Civ. Code § 1750 *et seq.* (*id.* ¶¶ 104-19); and, if no enforceable contract exists, (4) unjust enrichment (*id.* ¶¶ 120-29). Plaintiff seeks damages and declaratory and injunctive relief, including what she contends is injunctive relief "on behalf of the general public." *Id.* at p. 23 (Prayer for Relief); *see also id.* ¶¶ 70-73 (describing request for injunctive relief putatively on behalf of "the public"). However, Plaintiff does not articulate any requested relief on behalf of the "public" as opposed to herself or USAA FSB checking account customers generally.

### B.    The Arbitration Provision

As Plaintiff acknowledges in the FAC, her checking account with USAA FSB is governed by USAA FSB's Deposit Agreement. *E.g.*, FAC. ¶¶ 7, 30-34, 75. The Deposit Agreement contains a detailed arbitration provision (*id.*, Ex. A at pp. 33-36 of 59), the relevant parts of which are reproduced below for the Court's convenience:

> ***Resolution of Disputes and Claims***
>
> Any Covered Claim, upon election by either you or FSB, shall be resolved by arbitration according to the terms of this Arbitration section. * * * Covered Claims subject to arbitration, include without limitations (a) those based in contract; tort; state or federal statutes, regulations or ordinances; state or federal common law; state or federal constitutional law; and (b) those seeking any form of equitable relief or money damages.

*Claims Covered By Arbitration*

\*       \*       \*

- The account or account disclosures, including for example any application, advertisement, disclosure, promotion, or oral or written statement related to the account, or the establishment, operation, or termination of your account, whether occurring or made before your account was opened or after it was closed or terminated.

- A payment (or returned payment) or credit (or the failure to provide a credit).

\*       \*       \*

*Class Action Limitations*

The arbitrator shall be restricted to resolving only the Covered Claims between you and FSB. Unless you and FSB both consent in writing, the arbitrator shall NOT have the authority to conduct any class-wide arbitration proceedings. The arbitrator may not consolidate or join together any Covered Claims you and FSB have against each other with any claims or disputes you or FSB may have with other persons or account holders, unless you and FSB both consent in writing. You may not pursue any type of collective action or class action against FSB in court or in arbitration. You will not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Covered Claim as to which arbitration has been elected. If one or more of the above limitations on proceedings and other rights is deemed to be unenforceable or interpreted to not prevent a collective or class action, then such collective or class action shall proceed in a court of law and not in arbitration.

*Limitation of Arbitrator's Authority*

The arbitrator may award any damages or other relief permitted by applicable substantive law, including punitive damages. \* \* \* The arbitrator may award injunctive or declaratory relief that would benefit you or FSB, but the arbitrator may not award injunctive or declaratory relief for the benefit of others who are not named parties to the arbitration proceedings

\*       \*       \*

***YOU UNDERSTAND AND AGREE THAT IF EITHER YOU OR FSB ELECTS TO ARBITRATE A COVERED CLAIM, THIS ARBITRATION SECTION PRECLUDES YOU AND FSB FROM LITIGATING CLAIMS THROUGH COURT OR HAVING A JURY TRIAL ON THAT CLAIM, OR ENGAGING IN PRE- ARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE ARBITRATION RULES. FURTHER, NEITHER YOU OR FSB WILL HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. THE ARBITRATION DECISION WILL GENERALLY BE FINAL AND BINDING. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.***

## ARGUMENT

The Federal Arbitration Act ("FAA") "instruct[s] federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."

*Epic*, 138 S. Ct. at 1619; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("courts must enforce arbitration contracts according to their terms"). Under the FAA, arbitration agreements are presumptively enforceable and must be construed with "a healthy regard for the federal policy favoring arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985). In any suit "referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3.

A court faced with a motion to compel arbitration must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc).[4] Here, it is plain that the second element of this test is satisfied. Plaintiff's state-common law and statutory claims relate to and arise out of the Agreement, USAA FSB's fee disclosures, and Plaintiff's payments thereunder. Particularly because federal law requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (*Soler*, 473 U.S. at 626), there is no credible argument that Plaintiff's claims against USAA FSB fall outside the scope of the parties' agreement to arbitrate. Indeed, courts interpreting a substantially similar version of the USAA FSB arbitration provision have enforced that agreement in accordance with the "strong federal policy favoring arbitration." *Lezell v. USAA Sav. Bank*, 2016 WL 1212368, at *1-2 (E.D.N.Y. Mar. 28, 2016) (compelling arbitration of Telephone Consumer Protection Act claims arising from credit card agreement with USAA Savings Bank).

Thus, the only question before the Court is whether Plaintiff's agreement to arbitrate is valid and enforceable. As we demonstrate below, it is.

---

[4]     There is no question that the FAA applies to the arbitration provision in the Deposit Agreement. The FAA applies to "the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Plaintiff is a California resident and USAA FSB is a Texas-based federal savings association that provides retail banking services throughout the United States. FAC ¶¶ 13-14. The Deposit Agreement also states that "[t]he transactions between you and FSB involve interstate commerce and the FAA governs this Arbitration section" and expressly provides that "[s]tate arbitration laws and procedures shall not apply to this Agreement." *Id.*, Ex. A. at 36 of 59.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    The Arbitration Agreement Is Valid and Enforceable

The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has emphasized, this savings clause "recognizes only defenses that apply to 'any' contract," meaning "generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Epic*, 138 S. Ct. at 1622 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Plaintiff's FAC does not contain any allegations that would support a generally applicable contract defense like fraud, duress, or unconscionability. To the contrary, she expressly embraces the Deposit Agreement as the basis for her claims. *See* FAC ¶ 75 (contending that Plaintiff "ha[s] contracted for bank account deposit and checking services, as embodied in USAA's Deposit Agreement and related documentation").

Plaintiff's defense to arbitration instead appears to rest solely on *McGill*. In that case, the California Supreme Court held that an agreement barring a plaintiff from seeking "public injunctive relief" is unenforceable under California law and, further, that such a rule was not preempted by the FAA. 393 P.3d at 94. The FAC plainly attempts to come within scope of *McGill*. *E.g.*, FAC ¶¶ 1,7. For several reasons, though, this attempt fails.

### A.    Plaintiff's Claims Are Governed By Texas Law.

As an initial matter, *McGill* describes a "rule of *California* law." *McGill*, 393 P.3d at 87, 94-95 (emphasis added). Plaintiff's Deposit Agreement with USAA FSB, however, expressly states that it "shall be governed by federal laws and regulations applicable to federal associations such as FSB, and, to the extent that local law applies, by the laws of the state of Texas." FAC, Ex. A at p. 7 of 59. The Online Bank Agreement similarly provides that the agreement "shall be governed by the laws of the State of Texas and of the United States." FAC, Ex. B at p. 15 of 46 ¶ 37.

"Before a federal court may apply state-law principles to determine the validity of an arbitration agreement, it must determine which state's laws to apply." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). Federal courts sitting in diversity look to the law of the forum state in making a choice-of-law determination—here, California. *Id.*

-7-

California follows the choice-of-law principles set forth in Restatement (Second) of Conflict of Laws § 187. *Washington Mut. Bank, FA v. Super. Ct.*, 15 P.3d 1071, 1078-79 (Cal. 2001); *Nedlloyd Lines B.V. v. Super. Ct.*, 834 P.2d 1148, 1151 (Cal. 1992). Section 187 in turn "reflect[s] a strong policy favoring enforcement" of contractual choice-of-law provisions. *Nedlloyd*, 834 P.2d at 1151. Specifically, when a contract contains a choice-of-law provision, a court must ask "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Id*. at 1152. If the answer to either of these questions is yes, the court must determine "whether the chosen state's law is contrary to a *fundamental* policy of California." *Id*. (emphasis in original). If there is no fundamental conflict, the court should enforce the parties' choice of law. *Id*. If there is a conflict, the court must proceed to determine whether California has a "materially greater interest" than the chosen state in resolving the particular issue in question. *Id*.

The first step of the *Nedlloyd* test—a substantial relationship between the transaction and the chosen forum—is satisfied here. USAA FSB "is a federal savings association with its headquarters and place of business located in San Antonio, TX." FAC ¶ 14. And the Deposit Agreement provides that many transactions and obligations set forth under the agreement are conditioned on the date that transactions or deposits are received and entered in Texas. *See, e.g.*, FAC, Ex. A at pp. 11 of 59, 20 of 59.  In addition, USAA FSB has no branches in California.[5]

Plaintiff cannot avoid the application of Texas law by claiming that there is a fundamental conflict between Texas and California law in this case. As explained in Part I.B.I *infra*, *McGill* does not apply to this case because Plaintiff is not seeking public injunctive relief. *See Rappley v. Portfolio Recovery Assocs., LLC*, 2017 WL 3835259, at *5-6 (C.D. Cal. Aug. 24, 2017) (applying Utah law where "the relief Plaintiff seeks is not designed to prevent future harm to the public at large, but is rather intended to redress prior and future injury to a specific group of putative plaintiffs"). Accordingly, "there is no basis to conclude that enforcement" of the choice-of-law

---

[5]    *See, e.g.*, USAA Financial Centers, https://www.usaa.com/inet/pages/usaa_financial_center (last visited May 13, 2019).

provision "would contravene fundamental California policy." *Id.* In any event, even if *McGill* did apply, "[t]he mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would, are not reasons for applying California law." *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000) (citing *Wong v. Tenneco* 702 P.2d 570, 576-77 (Cal. 1985)).[6]

Finally, even if there were a fundamental conflict between California and Texas here, Plaintiff does not show that California has a "materially greater interest" in the enforcement of its law. Because there is a substantial relationship between the parties and Texas, Plaintiff has the burden of demonstrating that the choice-of-law provision should not be enforced. *See Washington Mut. Bank*, 15 P.3d at 1079 ("if the proponent of the clause . . . demonstrates that the chosen state has a substantial relationship to the parties or their transaction, . . . the parties' choice generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue"). Plaintiff, however, does not allege that she opened her account in California, received alleged misrepresentations in California, or was domiciled in California at the time of the alleged misrepresentations. *Cf. Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1008-09 (N.D. Cal. 2014) (a party bringing misrepresentation claims cannot "obfuscat[e] the state in which [it] purchased [the] product"). Nor does she allege any other facts to meet this burden.

The FAC alleges (for the first time) that the *transactions* at issue took place while she was living in California. FAC ¶ 20. But that is too slender a reed on which to overcome the strong presumption that the parties' choice-of-law will apply, particularly because courts are "more inclined to defer to the policy of a state which is closely related to the contract." Restatement of Conflict of Laws § 187, cmt g. USAA FSB is located in Texas and the parties selected Texas law to govern the agreement. Texas is far more closely related to the contract than California, which is

---

[6]    Texas "strongly favor[s]" the resolution of disputes through arbitration. *Prudential Secs., Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995). Texas does not appear to recognize "public injunctive relief" and we are aware of no Texas case holding that an agreement waiving the right to seek such relief in any forum is unenforceable.

implicated only because at some point after signing the agreement Plaintiff established residence there and initiated a bank transaction.

### B.   The Arbitration Agreement Is Valid And Enforceable Even If California Law And The *McGill* Rule Apply.

Even if the validity of the arbitration agreement were evaluated under California law, the Court should still compel arbitration for two reasons. First, Plaintiff's request for public injunctive relief is simply an ill-disguised attempt at getting around her arbitration agreement. Courts should not invalidate arbitration arguments based on illusory requests for public injunctive relief. Second, even if Plaintiff were seeking *bona fide* public injunctive relief, *McGill*'s rule purporting to invalidate arbitration agreements that prohibit such relief is preempted by the FAA.

### 1.   Plaintiff does not seek public injunctive relief.

Public injunctive relief is relief sought "primarily for the benefit of the general public" rather than the party bringing the action. *McGill*, 393 P.3d at 94 (internal quotations omitted); *see also Kilgore*, 718 F.3d at 1061. Accordingly, even under *McGill*, relief "that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—*or to a group of individuals similarly situated to the plaintiff*—does not constitute public injunctive relief." 393 P.3d at 90 (emphasis added). The FAC claims to seek public relief on behalf of "the public" generally, claiming that USAA FSB's "marketing practices" "distort[] the marketplace" for consumer banking. FAC ¶ 72. But Plaintiff's request for damages and private declaratory and injunctive relief, the nature of her claims, and her attempts to represent a class action of similarly situated USAA FSB customers plainly belie this assertion.

Courts in this Circuit have routinely held that "[m]erely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for *public* injunctive relief." *Johnson v. JP Morgan Chase Bank, N.A.*, 2018 WL 4726042, at *6 (C.D. Cal. Sept. 18, 2018); *see also, e.g.*, *Bell-Sparrow v. SFG*Proschoicebeauty*, 2019 WL 1201835, at *5 n.9 (N.D. Cal. Mar. 14, 2019); *McGovern*, 362 F. Supp. 3d at 859; *Rappley*, 2017 WL 3835259, at *5-6; *Wright v. Sirius XM Radio, Inc.*, 2017 WL 4676580, at *9 (C.D. Cal. Jun. 1, 2017). In *Johnson*, for example, the court held that "vague and generalized" requests for public

injunctive relief in a breach-of-contract case alleging improper fees were "merely incidental" to the plaintiff's central request for damages and were insufficient to constitute a request for public injunctive relief within the meaning of *McGill*. 2018 WL 4726042, at *6-7. As the court noted, "the classes Plaintiffs seek to represent are not comprised of the general public; instead, they are comprised of persons who have already incurred the allegedly unlawful fees." *Id.* at *7. Likewise, in *Rappley*, the court observed that "the classes which Plaintiff seeks to represent are not comprised of the general public" but "of persons who were subjected to purportedly unlawful debt collection efforts." 2017 WL 3835259, at *6.

Here too, Plaintiff's proposed classes do not include members of the general public but only those USAA FSB checking accountholders "who, during the applicable statute of limitations, were charged multiple NSF fees on the same item." FAC ¶ 60. Plaintiff's attempt to seek "public" injunctive relief is further undermined by the fact that USAA FSB only offers its accounts to members (rather than the general public), and applicants must satisfy certain eligibility requirements related to military service to become a member.[7] As such, the notion of a "public" injunction against USAA FSB is a poor fit.

In *McGovern*—a case involving a similar duplicate-fee theory as this case—the court concluded that the plaintiff's request for a putative public injunction stemming from fee-related claims "aris[ing] from breach[] of bilateral contracts between [the customer] and [the bank]" did not implicate *McGill*. *McGovern*, 362 F. Supp. 3d at 858. The court specifically rejected the plaintiff's argument that she was seeking public injunctive relief because her bilateral contract materials were part of broader "marketing" efforts by a bank. "[R]egardless of how the account agreement is characterized," the court stated, "any injunction related to these materials would primarily benefit only USB account-holders who would otherwise incur the duplicate OON Fees or OD Fees in the future." *Id.*[8]

---

[7]      *See, e.g.*, USAA: Why Choose USAA, https://www.usaa.com/inet/wc/why_chooose_usaa_main ("We welcome you to join USAA if you are: Active military, former military, an eligible family member, or a cadet or midshipman.") (last visited May 13, 2019).

[8]      Notably, both *Johnson* and *McGovern* were brought by the same counsel that represent Plaintiff in this case. In *McGovern*, the court observed that inclusion of a claim for public injunctive

The *McGovern* court also observed that to the extent the plaintiff *did* seek public injunctive relief, doing so would raise serious concerns under Article III. To demonstrate standing under Article III, a plaintiff must show that she "has suffered an injury in fact, that the injury is traceable to the challenged action of the defendant and that the injury can be redressed by a favorable decision." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001). And a plaintiff "must demonstrate standing for each form of relief [s]he seeks." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 191-92 (2000)). By definition, however, public injunctive relief is directed toward the general public and "benefits the plaintiff, if at all, only incidentally and/or as a member of the general public." *McGill*, 393 P.3d at 89 (internal quotations omitted). Particularly where the plaintiff is simultaneously seeking *private* injunctive relief, as here (FAC ¶ 70), a public injunction "that is not intended to benefit the plaintiff cannot be said to redress any injury allegedly suffered by the plaintiff," which means that a plaintiff "lacks the Article III standing required to seek such relief in federal court." *McGovern*, 362 F. Supp. 3d at 858; *see also N. Plains Res. Council v. Lujan*, 874 F.2d 661, 668 (9th Cir. 1989) (no standing based on alleged injury that is not "distinguishable from that of the general public"); *Palmer v. Stassinos*, 348 F. Supp. 2d 1070, 1089-89 (N.D. Cal. 2004) (plaintiffs who lack personal stake in requested remedy "do not have standing to assert such remedy on behalf of the general public in federal court"). These serious standing questions provide an independent reason to doubt that Plaintiff is truly seeking public injunctive relief. Rather, she is merely seeking to invalidate her arbitration agreement through artful pleading.

---

relief "only after the defendant moved to compel arbitration and without the inclusion of new facts supporting such claim, and his reliance on the public relief claim as a means to avoid arbitration, supported a finding that the purpose of the relief sought was unique to the plaintiff." 2019 WL 329537, at *4 (citing *Croucier v. Credit One Bank, N.A.*, 2018 WL 2836889, at *5 (S.D. Cal. Jun. 11, 2018)). It follows that counsel's attempts to avoid arbitration in subsequent lawsuits by including a putative "public injunctive relief claim" that has already been rejected by multiple other district courts also supports a finding that the purpose of the lawsuit is not to benefit the public.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2. *McGill* is preempted by the FAA.

Even if Plaintiff sought a genuine public injunction, the Court should enforce her arbitration agreement because the *McGill* decision is preempted by federal law. It is a basic principle that a state-law rule that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" is "preempted by the FAA." *Concepcion*, 563 U.S. at 352.

In recent years, the Supreme Court has repeatedly cautioned that laws disfavoring arbitration come in a variety of forms, so that courts "must be alert to new devices and formulas" that would alter fundamental attributes of arbitration, regardless of whether those devices "target arbitration . . . by name" or by "more subtle methods." *Lamps Plus*, 2019 WL 1780275, at *7 (quoting *Epic*, 138 S. Ct. at 1622-23); *see also Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) (explaining that the FAA "displaces any rule" that "prohibit[s] outright the arbitration of a particular type of claim" or that "covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements"). *McGill*'s rule against waiver of a public injunction claim, which would fundamentally alter traditional individualized arbitration, is "merely the latest 'device or formula' intended to achieve [this] result," and is therefore preempted. *McGovern*, 362 F. Supp. 3d at 863.

### a. *McGill* interferes with fundamental attributes of arbitration.

The Supreme Court has long recognized that among the core attributes of arbitration are individualized (or "bilateral") dispute resolution and a relatively informal nature of proceedings. *Epic*, 138 S. Ct. at 1622-23; *Concepcion*, 563 U.S. at 347-51. Just last month, the Court re-emphasized that "shifting from individual to class arbitration is a 'fundamental' change that 'sacrifices the principal advantage of arbitration' and 'greatly increases risks to defendants.'" *Lamps Plus*, 2019 WL 1780275, at *4 (citations omitted).The Ninth Circuit too has stated that "individualized proceedings are an inherent and necessary element of arbitration." *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1158 (9th Cir. 2012). In short, the FAA protects "pretty absolutely" parties' rights to "specify the rules that would govern their arbitrations," including an "intention to use individualized rather than class or collective action procedures." *Epic*, 138 S. Ct. at 1621.

Contrary to these principles, the *McGill* rule would arbitration from a traditional individualized proceeding into a much more complex and expensive proposition—exactly what the Supreme Court has made clear states may not do under Section 2 of the FAA.

When a claimant seeks injunctive relief in an individualized, one-on-one arbitration, the primary questions are whether the *individual claimant* is likely to suffer injury in the future, whether damages are inadequate to remedy any such injury she might suffer, and whether the balance of the equities "between the plaintiff and defendant" favors the issuance of an injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). If those requirements are satisfied, the arbitrator may configure forward-looking relief that will protect *that claimant*.

Public-injunction proceedings, by contrast, require consideration of the rights of persons other than the claimant who institutes the arbitration: *all other affected consumers and other third parties*. In a suit for a public injunction, the question becomes not what the happened to the claimant but whether the challenged practice "threaten[s] future injury to the general public"—and if so how to configure relief to benefit the "general public." *McGill*, 393 P.3d at 90. The public injunction therefore amounts to what commentators have referred to as "a 'nonclass class.'" WILLIAM L. STERN, RUTTER BUSINESS & PROFESSIONS CODE SECTION 17200 PRACTICE § 7:38 (Supp. 2018). Courts appropriately have refused to permit requests for injunctive relief by arbitration claimants that seek relief that is not "tailored to the individual claimant" and that would "necessarily affect the rights of more than the parties to the dispute." *AT&T Mobility LLC v. Gonnello*, 2011 WL 4716617, at *3 (S.D.N.Y. Oct. 7, 2011); *see also AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549, at *6-7 (N.D. Cal. Oct. 26, 2011) (requests for "non-individualized relief" bear "all the critical hallmarks of class and representative actions" and "would generate procedural morass" and "seriously affect many absent parties' interests"). A request for a public injunction is no different.

In addition, adjudicating requests for public injunctive relief is incompatible with arbitration's streamlined and informal procedures. In UCL actions, "claimants are entitled to introduce evidence not only of practices which affect them individually, but also similar practices involving other members of the public who are not parties to the action." *Cisneros v. U.D. Registry, Inc.*, 46 Cal. Rptr. 2d 233, 244 (Ct. App. 1995). Likewise, an adjudicator considering a request for

-14-

public injunctive relief must evaluate the "balance of hardships" and the "public interest" in determining whether to grant a public injunction. *Allergan, Inc. v. Athena Cosmetics, Inc.*, 2013 WL 12142655, at *2 (C.D. Cal. Mar. 6, 2013). None of these complications arises in a suit for individual, private relief.

Because the evidence, legal tests, and scope of relief for a public injunction are vastly broader than the evidence, legal tests, and scope of relief applicable to an individualized, one-on-one remedy tailored to the particular claimant, requests for public injunctions will make arbitration exponentially more costly and time consuming than traditional bilateral arbitration. Indeed, the California Supreme Court has acknowledged that there is an "inherent conflict" between arbitration and the public "injunctive relief remedy" that requires the decisionmaker to "assume quasi-executive functions of public administration that expand far beyond the resolution of private disputes." *Broughton v. Cigna Healthplans of Cal.*, 988 P.2d 67, 77-78 (Cal. 1999).

The FAA preempts rules requiring arbitral proceedings that "would take much time and effort, and introduce new risks and costs for both sides," for such rules would undermine "the virtues Congress originally saw in arbitration"—"its speed and simplicity and inexpensiveness"—and would mean that "arbitration would wind up looking like the litigation it was meant to displace." *Epic*, 138 S. Ct. at 1623. By requiring public arbitration claims to be adjudicated in court, *McGill* "prohibit[s] a streamlined bilateral arbitration" of claims and violates the FAA. *McGovern*, 362 F. Supp. 3d at 863.

### b. *Roberts* does not support denial of the motion to compel.

USAA FSB acknowledges that this Court concluded in *Roberts v. AT&T Mobility LLC* that *McGill* was not preempted under federal law. The Court relied principally on the Ninth Circuit's decision in *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015), which held that the FAA did not preempt California's rule that claims under the California Private Attorney General Act ("PAGA") cannot be waived outright. The Court reasoned that under *Sakkab*, "[t]he magnitude of the stakes does not per se preclude arbitration," and it extended that principle to *McGill* on the grounds that "[i]n both PAGA and public injunction cases, relief is sought for parties beyond the individual plaintiff." *Roberts*, 2018 WL 1317346, at *6-7.

Respectfully, the Court's conclusion in *Roberts* is not determinative here.

***First***, the Court's analysis in *Roberts* pre-dated the Supreme Court's decisions in *Epic* and *Lamps Plus*, which make clear that *Sakkab* was wrongly decided. The Ninth Circuit in *Sakkab* assumed that the FAA preempts a state law rule only if it imposes procedures akin to class proceedings. *See* 803 F.3d at 435-36. But *Epic* shows that a state-law rule need not impose the equivalent of full-blown class proceedings to be preempted under the FAA. It is enough if a putatively neutral rule in practice interferes with "the individualized nature of the arbitration proceedings," which are "one of arbitration's *fundamental attributes*." *Epic*, 138 S. Ct. at 1622 (emphasis added). Prior to *Epic*, the Supreme Court had stated that a mere requirement of "judicially monitored discovery" or "adherence to the Federal Rules of Evidence" would be incompatible with the FAA's emphasis on "streamlined proceedings." *Concepcion*, 563 U.S. at 344. *Epic* confirms that this is the case.

The Court understandably did not have the benefit of *Epic*'s analysis when it ruled in *Roberts*, but it does now, and it should hold that *Sakkab* does not control here. Other courts have reached this same conclusion. In *McGovern*, the court found it "difficult to reconcile" *Sakkab* with *Epic*, noting that *Epic* "reversed a Ninth Circuit opinion issued after *Sakkab* in which the Ninth Circuit majority had held, using reason similar to (and even citing) *Sakkab*, that concerted action waivers violate the National Labor Relations Act … and this result did not run afoul of the FAA." 362 F. Supp. 3d at 862 n.5. The *McGovern* court therefore found that *McGill* was preempted.

The Supreme Court's decision in *Lamps Plus*—which reversed the Ninth Circuit's application of California law to require class arbitration in an agreement that was at best ambiguous—further bolsters this conclusion. Similar to *Epic*, the Ninth Circuit's decision in *Lamps Plus* relied on *Sakkab*'s characterization of a class action as merely a "a procedural device for resolving the claims of absent parties on a representative basis"—the same characterization that the California Supreme Court gave to explain its purportedly neutral *McGill* rule. *Compare Varela v. Lamps Plus, Inc.*, 701 F. App'x 670, 673 (9th Cir. 2017), *with McGill*, 393 P.3d at 97; *see also Roberts*, 2018 WL 1317346, at *5 (discussing this aspect of *McGill*'s reasoning). In reversing the Ninth Circuit, the Supreme Court stressed the "importan[ce]" of the "fundamental" difference

"between class and individualized proceedings in the arbitration context. *Lamps Plus*, 2019 WL 1780275, at \*5. In light of *Lamps Plus*, *McGill*'s transformational effect on traditional individualized arbitration (*see* pp. 13-15 *supra*) means that *McGill*'s rule is preempted.

**Second**, a public injunction claim is significantly more incompatible with bilateral arbitration than the PAGA actions at issue in *Sakkab*. In *Sakkab*, the Ninth Circuit observed that there were several "fundamental differences between PAGA actions and class actions," most significantly that PAGA claims are "a form of *qui tam* action" in which the plaintiff stands in the shoes of the state. *Sakkab*, 803 F.3d at 435, 439. *Qui tam* actions implicate California's "historic police powers" and have long played a "central role in enforcing California's labor laws." *Id*. at 439-40. Unlike a *qui tam* action, a plaintiff seeking a public injunction does not act as a proxy for the State. Instead, the plaintiff acts like a class representative, seeking to litigate the rights of *non*parties. It is precisely this representative function that transforms a public injunction proceeding from a bilateral one into one focused on the rights of absent parties. *Compare Kraus v. Trinity Mgmt. Servs., Inc.,* 999 P.2d 718, 733 (Cal. 2000) (inquiring into whether UCL plaintiff is "competent" to seek representative relief), *with Sakkab,* 803 F.3d at 436 ("[T]here is no need to protect absent employees' due process rights in PAGA arbitrations."). These distinctions weigh heavily against extending *Sakkab*'s already questionable rationale for PAGA claims into the public injunction context.

**Finally**, unlike PAGA claims, a claim for public injunctive relief does not implicate the interests of the named plaintiff in anything but an "incidental" way. *McGill*, 393 P.3d at 89-90. As the *McGovern* court explained, "[a]lthough the *McGill* court characterizes its rule as concerning only a private plaintiff's right to relief under California's consumer protection statutes, the relief in question . . . is relief that would otherwise be unavailable if not for the California statutes" and "is, by definition, unnecessary to make a plaintiff whole in an individual arbitration." 362 F. Supp. 3d at 863. *McGill* is thus indistinguishable from California's *Discover Bank* rule, which the Supreme Court struck down in *Concepcion* despite the plaintiff's argument that *Discover Bank* did "not *require* classwide arbitration," as parties could agree instead to litigate class actions in court. *Concepcion*, 563 U.S. at 346. As Justice Kagan later explained, the *Discover Bank* rule was

-17-

preempted because it "was designed to preserve the broad-scale 'deterrent effects of class actions,' not merely to protect a particular plaintiff's right to assert her own claim." *McGovern*, 362 F. Supp. 3d at 863 (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 251-52 (2013) (Kagan, J., dissenting)). The same is true here. Just as California cannot declare that plaintiffs have a "right" to bring class actions in some forum under the FAA, California cannot create a broad-scale, deterrent right to seek a public injunction that is unnecessary to afford the plaintiff individual relief and declare that arbitration agreements that waive that "right" are unenforceable.

## II.    At A Minimum, The Court Should Compel Arbitration On Liability Before Addressing The Propriety Of Public Injunctive Relief.

Even if the Court is inclined to adhere to its determination in *Roberts*, it should still compel arbitration of Plaintiff's claims generally. In *McGill*, the California Supreme Court explained that "case law establishes that a stay of proceedings as to any inarbitrable claims is appropriate until arbitration of any arbitrable claims is concluded." *McGill*, 393 P.3d at 97. The Ninth Circuit too has repeatedly confirmed that if a plaintiff brings both arbitrable claims and nonarbitrable claims for injunctive relief, the appropriate course is to stay the nonarbitrable claims until the arbitrator has had a chance to address the underlying claims on the merits. *See Aviles v. Quik Pick Exp., LLC*, 703 F. App'x 631, 632 n.2 (9th Cir. 2017) ("we think it appropriate that the stay encompass his injunctive claims, to the extent they remain in the district court"); *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 937 (9th Cir. 2013) (if the arbitrator concludes that it cannot issue public injunctive relief, the plaintiffs "may return to the district court to seek their public injunctive relief"); *see also Wiseman v. Tesla, Inc.,* 2017 WL 7058142, at *3 (C.D. Cal. Sept. 12, 2017) (request to invalidate arbitration agreement on *McGill* grounds was "premature" until after the arbitrator "determine[s] in the first instance [the defendant's] liability, if any").

Here, at a minimum, Plaintiff's breach of contract and unjust enrichment claims are subject to individual arbitration. In pursuing those claims Plaintiffs does not and cannot purport to seek public injunctive relief. *See McGill*, 393 P.3d at 89-90 (discussing public injunctive relief claims "under the CLRA, the UCL, or the false advertising law" only). The Court should therefore refer this case to the arbitrator to decide at least those claims, and any other claims or portions of claims

1  that the arbitrator deems arbitrable, even if the Court finds that the arbitration agreement's

2  restriction on the issuance of public injunctive relief is not enforceable under *McGill*.[9]

3      It is true that, in *Roberts*, this Court declined to order arbitration on the merits because of a

4  "poison-pill" clause, which the Court interpreted to render the entire arbitration provision null and

5  void in the event that the restriction on injunctive relief was found to be unenforceable. 2018 WL

6  1317346, at *8-9 (calling this provision the "critical part" of the severability analysis). Here,

7  however, there is no such provision, and the Deposit Agreement provides that "[a] determination

8  that any part of this Agreement is invalid or unenforceable will not affect the remainder of this

9  Agreement." FAC, Ex. A at p. 33 of 59. At a minimum, therefore, this Court should order Plaintiff

10  to arbitrate her claims in the first instance. If the arbitrator finds that USAA FSB is liable, Plaintiff

11  may return to Court to seek public injunctive relief. *Ferguson*, 733 F.3d at 937.[10]

12                      **CONCLUSION**

13      The Court should compel Plaintiff to arbitrate her claims against USAA FSB and stay this

14  case pending resolution of the arbitration.

15

16                  [*Signature block on following page*]

17

18

19  _____

20  [9]      The arbitration agreement with Plaintiff provides that the arbitration will be conducted
before and governed by the rules of the JAMS Resolution Center ("JAMS") or the American
21  Arbitration Association ("AAA"). *See* FAC, Ex. A at p. 35 of 59. When a contract provides that
the JAMS or AAA rules apply, it is well-established that questions regarding arbitrability or the
22  scope of arbitrable issues are reserved for the arbitrator. *See, e.g.*, *Brennan v. Opus Bank*, 796 F.3d
1125, 1130-31 (9th Cir. 2015) (AAA rules); *Amtax Holdings 463, LLC v. KDF Communities-*
23  *Hallmark, LLC*, 2018 WL 4743386, at *5-6 (C.D. Cal. Jan. 9, 2018) (JAMS rules).

24  [10]      The Deposit Agreement states that if any of the agreement's limitations on the pursuit of
"[a]ny type of collective action or class action" are "deemed to be unenforceable or interpreted not
25  to prevent a collective class action," then "such collective or class action shall proceed in a court
of law and not in arbitration." FAC, Ex. A at p. 35 of 59. But the *McGill* rule is premised on a
26  supposed "distinction between class claims and public injunctions." 393 P.3d at 97. Thus, Plaintiff
cannot invoke *McGill* to avoid arbitration and then argue that a finding that the agreement is
27  unenforceable under *McGill* is sufficient to invoke the contract's poison-pill provision for class and
collective claims.

28

1

Date: May 13, 2019                    Respectfully submitted,

2

3                                     MAYER BROWN LLP

4                                     By: /s/ Thomas V. Panoff
                                            Thomas V. Panoff
5
                                      Elspeth Hansen (SBN 292193)
6                                     MAYER BROWN LLP
                                      Two Palo Alto Square, Suite 300
7                                     3000 El Camino Real
                                      Palo Alto, CA 94306
8                                     Telephone: (650) 331-2000
                                      Facsimile: (650) 331-2060
9                                     Email: ehansen@mayerbrown.com

10                                    Megan S. Webster (*pro hac vice*)
                                      Thomas V. Panoff ((*pro hac vice*)
11                                    MAYER BROWN LLP
                                      71 South Wacker Drive
12                                    Chicago, IL  60606
                                      Telephone:  (312) 782-0600
13                                    Facsimile:  (312) 701-7711
                                      Email: megan.webster@mayerbrown.com
14                                         tpanoff@mayerbrown.com

15                                    *Attorneys for Defendant*
                                      *USAA Federal Savings Bank*
16

17

18

19

20

21

22

23

24

25

26

27

28