Hassan A. Zavareei (CA Bar No. 181547)
Andrea Gold (*admitted pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 973-0900
Fax: (202) 973-0950
*hzavareei@tzlegal.com*
*agold@tzlegal.com*

Jeffrey D. Kaliel (CA Bar No. 238293)
Sophia G. Gold (CA Bar No. 307971)
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
Tel: (202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielpllc.com*

*Attorneys for Plaintiff and the Putative Classes*
*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH EIESS, individually and on behalf of all others similarly situated,<br><br>PLAINTIFF,<br><br>vs.<br><br>USAA FEDERAL SAVINGS BANK,<br><br>DEFENDANT. | Case No. 3:19-cv-00108-EMC<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date:  July 11, 2019<br>Time:  1:30 p.m.<br><br>Hon. Edward M. Chen |

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ...................................................................................................ii

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT .........................................................................................................3

      A.     The Arb. Clause is Invalid and Unenforceable.........................................3

             i.     The Arb. Clause Improperly Deprives Consumers of the Ability to Seek Public Injunctive Relief in Any Forum, in Violation of *McGill*.........................................................................................3

             ii.    The FAA Does Not Preempt the *McGill* Rule .................................5

             iii.   Eiess Seeks Public Injunctive Relief .........................................10

      B.     The Court should not compel arbitration of liability.........................................15

      C.     Plaintiff's Claims Are Not Governed by Texas Law .......................................15

             i.     The Principle Underlying *McGill* is Fundamental Policy of the State of California and Cannot Be Waived by Choice of Law Provisions ..................................................................................15

             ii.    If the Court Applies Texas Law, the Arbitration Provision is Illusory and Unenforceable.......................................................18

i

# TABLE OF AUTHORITIES

**CASES**  **PAGE(S)**

*Adkins v. Comcast Corp.*,
   No. 16-cv-05969, 2018 WL 4846548 (N.D. Cal. Feb. 15, 2018) ................................................. 1, 5, 6, 10

*Am. Online, Inc. v. Super. Ct.*,
   90 Cal. App. 4th 1, 18, 108 Cal. Rptr. 2d 699 (2001) ................................................. 17

*American Express Co. v. Italian Colors Restaurant*,
   570 U.S. 228 (2013) ................................................................................................. 6

*Aral v. Earthlink, Inc.*,
   36 Cal. Rptr. 3d 229 (2005) ...................................................................................... 17

*AT&T Mobility, Inc. v. Concepcion*,
   563 U.S. 333 (2011) ......................................................................................... 5, 7, 17

*Bell-Sparrow v. SFG*Proschoicebeauty*,
   No. 18-cv-06707, 2019 WL1201835 (N.D. Cal. Mar. 14, 2019) ................................ 14

*Blair v. Rent-A-Center, Inc.*,
   No. C 17-02335, 2017 WL 4805577 (N.D. Cal. Oct. 3, 2017) ................................. 1, 13

*Cardenas v. AmeriCredit Fin. Servs.*,
   No. C 09-04978, 2010 WL 3619851 (N.D. Cal. Sep. 13, 2010) ................................. 12

*Carey v. 24 Hour Fitness, USA, Inc.*,
   669 F.3d 202 (5th Cir. 2012) ....................................................................... 18, 19, 20

*Cheverez v. Plains All Am. Pipeline, LP*,
   No. CV15-4113, 2016 WL 4942328 (C.D. Cal. Feb. 25, 2016) ................................ 13

*Coast Plaza Doctors Hosp. v. Blue Cross of California*,
   83 Cal. App. 4th 677 (2000) ..................................................................................... 13

*Coker v. JPMorgan Chase Bank, NA*,
   364 P.3d 176 (Cal. 2016) ........................................................................................... 5

*Davidson v. Kimberly-Clark Corporation*,
   889 F.3d 956 (9th Cir. 2018) ..................................................................................... 15

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ......................................................................................8, 9, 10

*Ferguson v. Corinthian Colleges*,
   No. SACV 11–0127 DOC, 2012 WL 27622 (C.D. Cal. Jan. 5, 2012) ...................... 13

*Hemmings v. Tidyman's Inc.*,
  285 F.3d 1174 (9th Cir. 2002) ..................................................................................3, 13

*In re 24R, Inc.*,
  324 S.W.3d 564 (Tex. 2010) ...........................................................................................18

*In re AdvancePCS Health, L.P.*,
  172 S.W.3d 603 (Tex. 2005) ...........................................................................................20

*In re Halliburton Co.*,
  80 S.W.3d 566 (Tex. 2002) ...............................................................................18, 19, 20

*In re Marriage of Fell*,
  64 Cal. Rptr. 2d 522 (Cal. Ct. App. 1997) ......................................................................5

*Johnson v. JP Morgan Chase Bank, N.A.*,
  No. EDCV 17-2477, 2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ...............................14

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ......................................................................................................9

*League of Residential Neighborhood Advocates v. City of Los Angeles*,
  486 F.3d 1052 (9th Cir. 2007) ..........................................................................................5

*Little v. Auto Stiegler, Inc.*,
  63 P.3d 979 (Cal. 2003) ..............................................................................................6, 16

*Lloyd v. Navy Fed. Credit Union*,
  No. 17-cv-1280, 2018 WL 1757609 (S.D. Cal. Apr. 12, 2018)........................................17

*Mary R. v. B. & R. Corp.*,
  196 Cal. Rptr. 871 (Cal. Ct. App. 1983)............................................................................6

*McArdle v. AT&T Mobility, Inc.*,
  No. 09-cv-01117-CW, 2017 WL 4354998 (N.D. Cal. Oct. 2, 2017) ...............................1, 6, 15

*McGill v. Citibank, N.A.*,
  393 P.3d 85 (Cal. 2017) ..........................................................................................passim

*McGovern v. U.S. Bank, N.A.*,
  No. 18-CV-1794, 2019 WL 329537 (S.D. Cal. Jan. 25, 2019)....................................10, 14

*Mitsubishi Motors Corp.*,
  473 U.S. 614 (1985) .........................................................................................................16

*Morrison v. Amway Corp.*,
  517 F.3d 248 (5th Cir. 2008) ...........................................................................................20

*Nat'l Fed'n of the Blind v. The Container Store, Inc.*,
  904 F.3d 70 (1st Cir. 2018) ...............................................................................18, 19, 20, 21

*Nedlloyd Lines B.V. v. Superior Court,*
 3 Cal.4th 459 (1992) ................................................................................................ 16

*Oestreicher v. Alienware Corp.,*
 502 F. Supp. 2d 1061 (N.D. Cal. 2007), *aff'd,* 322 F. App'x 489 (9th Cir. 2009) .................................. 18

*Rappley v. Portfolio Recovery Assocs., LLC,*
 No. EDCV 17-108 JGB 2017 WL 3835259 (C.D. Cal. Aug. 24, 2017) ................................................ 14

*Rent-A-Center West, Inc. v. Jackson,*
 561 U.S. 63 (2010) ..................................................................................................... 5

*Roberts v. AT&T Mobility LLC,*
 No. 15-CV-03418-EMC, 2018 WL 1317346 (N.D. Cal. Mar. 14, 2018) ...................................... passim

*S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.,*
 641 F.2d 746 (9th Cir. 1981) ..................................................................................... 18

*Sakkab v. Luxottica Retail N. Am., Inc.,*
 803 F.3d 425 (9th Cir. 2015) ................................................................................... passim

*Tillage v. Comcast,*
 No. 17-C-6477 (N.D. Cal. Feb. 15, 2018) ............................................................. 1, 6, 10

*Torres v. S.G.E. Mgmt., L.L.C.,*
 397 F. App'x 63 (5th Cir. 2010) ................................................................................ 20

*Van Slyke v. Capital One Bank,*
 503 F.Supp.2d 1353 (N.D. Cal. 2007) ..................................................................... 17

*Wallace v. Wells Fargo Bank, N.A.,*
 No. 2017-1-CV-31777 (Cal. Sup. Ct. Aug. 7, 2018) ................................................. 13

*Wash. Mut. Bank v. Super. Ct.,*
 24 Cal. 4th 906 (2001) .............................................................................................. 18

*Weekley Homes, L.P. v. Rao,*
 336 S.W.3d 413 (Tex. App. 2011) ........................................................................... 20

*Wright v. Sirius XM Radio Inc.,*
 No. SACV 16–01688 JVS, 2017 WL 4676580 (C.D. Cal. June 1, 2017) ............................ 14

**STATUTES**

9 U.S.C. § 2 .................................................................................................................. 5

Cal. Civ. Code § 1751 ............................................................................................... 17

Plaintiff Elizabeth Eiess ("Eiess") submits her opposition to the Motion to Compel Arbitration ("Motion" or "Mot.") filed by Defendant USAA Federal Savings Bank ("USAA"), Dkt. No. 32, and in support thereof states as follows:

## I. INTRODUCTION

USAA seeks to compel arbitration of Eiess's claims. The trouble for USAA is that the arbitration clause ("Arb. Clause") contained in USAA's Deposit Agreement ("Agreement") is invalid and unenforceable under California law. The Arb. Clause requires Eiess to arbitrate all claims but then also prohibits the arbitrator from awarding injunctive relief for the benefit of others who are not parties to the arbitration proceedings. In other words, Eiess is precluded from bringing claims for public injunctive relief in any forum, including in arbitration. The Arb. Clause thus violates the California Supreme Court's decision in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), which held that contracts that deprive individuals of the right to seek public injunctive relief in any forum are void and unenforceable.

This Court already concluded in *Roberts v. AT&T Mobility LLC*, No. 15-CV-03418-EMC, 2018 WL 1317346 (N.D. Cal. Mar. 14, 2018) that *McGill* is not preempted by the Federal Arbitration Act ("FAA") because it is a generally applicable contract defense that implicates the FAA's savings clause and does not interfere with the fundamental attributes of arbitration. Numerous other courts have reached the same conclusion. *See, e.g., McArdle v. AT&T Mobility, Inc.*, No. 09-cv-01117-CW, 2017 WL 4354998, at *3-4 (N.D. Cal. Oct. 2, 2017); *Adkins v. Comcast Corp.*, No. 16-cv-05969, 2018 WL 4846548, at *1 (N.D. Cal. Feb. 15, 2018); *Tillage v. Comcast*, No. 17-C-6477 (N.D. Cal. Feb. 15, 2018) ("*Tillage*") (Dkt. No. 37); *Blair v. Rent-A-Center, Inc.*, No. C 17-02335, 2017 WL 4805577, at *4-5 (N.D. Cal. Oct. 3, 2017). Remarkably, USAA argues that the Court's well-reasoned analysis is wrong and asks this Court to join one outlier court in the Southern District of California in finding that *McGill* is preempted by the FAA. For the reasons set forth below, the Court should not depart from its and other courts' conclusion that the *McGill* rule is not preempted.

USAA also argues that Eiess's First Amended Complaint ("Complaint" or "Compl.") does not actually seek public injunctive relief, but this argument fails. In her Complaint, Eiess seeks to enjoin

USAA from making material omissions and misrepresentations to the public as to its multiple Non-Sufficient Funds ("NSF") Fee policy. Compl. ¶¶ 70-73. USAA misleadingly and deceptively misrepresents and omits material facts pertaining to its NSF Fee practices in its publicly-available Deposit Agreement, Fee Schedule, and Online Banking Agreement, which are all available online and in print to current and prospective accountholders. *Id.* ¶ 7. "Consumers, and the general public, rely on these documents in making important financial decisions regarding to whom they would like to entrust their money." *Id.* Because Eiess's requested injunctive relief would benefit the public at large, USAA is simply wrong that Eiess is not seeking public injunctive relief.

Because the Arb. Clause is void and unenforceable under *McGill*, the Court should not compel arbitration. USAA, however, contends that because there is no "poison pill" language rendering the entire Arb. Clause null and void, the Court can compel arbitration of claims as to liability yet litigate Eiess's request for public injunctive relief in federal court.  USAA's disjointed proposal is misguided—the *absence* of poison pill language does not mean the Court can ignore *McGill*'s conclusion that an arbitration clause prohibiting public injunctive relief in any forum is void and unenforceable. And, the Agreement's severability clause—in an entirely different section from the Arb. Clause—only permits the *remainder* of the Agreement to remain in effect if any part (here, the entire Arb. Clause) is rendered unenforceable. If USAA intended unenforceable provisions of the Arb. Clause to be severed and the rest of the Arb. Clause to remain in effect, it could have included language to that effect in the Arb. Clause. It did not, and its argument fails.

Finally, USAA contends that Eiess's claims are governed by Texas law and thus the Court should not apply *McGill*. But the Court cannot enforce the Agreement's choice-of-law provision because it is contrary to California public policy, namely the *McGill* rule. Even if the Court were to credit USAA's argument that Texas law applies, the Court should still not enforce the Arb. Clause because it is illusory under Texas law. Under Texas law, an arbitration clause is illusory when one party can avoid arbitration by amending the provision or terminating it altogether. That is precisely what exists here—the Agreement permits unilateral modification by USAA. Thus, whether the Court applies California or Texas law, it cannot compel arbitration of Eiess's claims.

For these reasons, discussed in more detail below, USAA's Motion should be denied in its entirety.

## II. ARGUMENT

### A. The Arb. Clause is Invalid and Unenforceable.

#### i. The Arb. Clause Improperly Deprives Consumers of the Ability to Seek Public Injunctive Relief in Any Forum, in Violation of *McGill*.

The Arb. Clause unlawfully deprives consumers of the right to seek public injunctive relief in any forum—whether in court or via arbitration—in violation of the Supreme Court of California's decision in *McGill*.

##### 1. Background: *McGill* Prohibits Waivers of the Right to Seek Public Injunctive Relief.

In *McGill*, the Supreme Court of California unanimously held that a contract cannot waive the right of a consumer to bring claims for public injunctive relief in any forum, which is relief that "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." 393 P.3d at 90. *McGill* considered whether an arbitration provision "is valid and enforceable insofar as it purports to waive [plaintiff]'s right to seek public injunctive relief *in any forum*." *Id.* (emphasis in original). After finding the complaint sought public injunctive relief, and that such relief was available under California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"), the California Supreme Court concluded any contract that waives the right to seek public injunctive relief is invalid and unenforceable under California law. *Id.* at 91-93. This statement of California law binds this Court. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002) ("In interpreting state law, federal courts are bound by the pronouncements of the state's highest court").

The California Supreme Court relied on California Civil Code § 3513 which provides that "a law established for a public reason cannot be contravened by a private agreement." Because the relief available under the UCL, the CLRA, and the FAL is "primarily for the benefit of the general public," any waiver of the right to seek public injunctive relief under those statutes "would seriously compromise the public purposes the statutes were intended to serve." *McGill*, 393 P.3d at 94

## 2. The Arb. Clause Contains the Type of Waiver Covered by *McGill*.

The Arb. Clause contains precisely the type of waiver *McGill* prohibits. The Arb. Clause requires all "Covered Claims" which include "(a) those based in contract; tort; state or federal statutes, regulations or ordinances; state or federal common law; state or federal constitutional law; and (b) those seeking any form of equitable relief or money damages" to be sent to arbitration. Compl., Ex. A at 33.[1] The Arb. Clause defines "Covered Claims" to include "any pre-existing, present, or future dispute, claim, or controversy that in any way arises out of or relates to" the parties' Agreement and thus includes all of Eiess's claims. *Id.* Then, the Arb. Clause limits the arbitrator to awarding injunctive or declaratory relief that would only benefit one of the parties to the Agreement, and prohibits him or her from awarding "injunctive or declaratory relief for the benefit of others who are not named parties to the arbitration proceedings." *Id.*, Ex. A at 35.

Because Eiess must bring all of her disputes related to the Agreement in arbitration, including those related to public injunctive relief, and the Arb. Clause also prohibits Eiess from raising such public injunctive relief claims in arbitration, USAA's Arb. Clause eliminates Eiess's ability to seek public injunctive relief *anywhere*. In other words, the prohibition on bringing any "Claims" to court, combined with the waiver language in the Arb. Clause, "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 393 P.3d at 87. This deprivation of the right to seek public injunctive relief *in any forum* violates California law, as interpreted in *McGill* and its progeny.

The Arb. Clause's language is akin to the arbitration clause invalidated by this Court in *Roberts*. In *Roberts*, the arbitration clause sent "all disputes and claims between us" to arbitration. *Roberts*, 2018 WL 1317346 at *8. This is substantively similar to the Arb. Clause's broad "Covered Claim" definition language quoted above. The *Roberts* arbitration clause further stated: "The arbitrator may award declaratory or *injunctive relief only in favor of the individual party seeking relief* and only to the extent necessary to provide relief warranted by that party's individual claim. *Id.* (emphasis added. The same language

---

[1] Page numbers reference the pages inserted by Plaintiff at the bottom of the Agreement, not the page numbers previously marked in the document itself.

exists here, as noted above. This Court invalidated the arbitration clause in *Roberts* and should do the same here. *Id.* at *9.

### ii. The FAA Does Not Preempt the *McGill* Rule.

As this Court has already concluded in *Roberts*, the FAA does not preempt *McGill*. The FAA may preempt state law in only two limited circumstances: (1) when a contract defense is not "generally applicable," i.e., it singles out arbitration agreements for special treatment, or (2) when it "conflicts with the FAA's objectives" even if it is a generally applicable contract defense. *See Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 433-440 (9th Cir. 2015) (quoting *AT&T Mobility, Inc. v. Concepcion*, (2011) 563 U.S. 333, 339 (2011) . Neither of those circumstances exists here.

### 1. The *McGill* Rule Is Not Preempted by the FAA Because It Is A Generally Applicable Contract Defense That Triggers the FAA's "Savings Clause."

USAA notably ignores the FAA "savings clause" which states that arbitration agreements, like other contracts, "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability[,]'" which applies equally to arbitration and non-arbitration agreements. *McGill*, 393 P.3d at 94 (quoting *Rent-A-Center West, Inc. v. Jackson* 561 U.S. 63, 68 (2010); *see also* 9 U.S.C. § 2; *Sakkab*, 803 F.3d at 432. The *McGill* rule is a generally applicable contract defense. Indeed, the *McGill* court specifically noted that "a provision in *any* contract—even a contract that has no arbitration provision— that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law." *McGill*, 393 P.3d at 94; *see also Adkins*, 2018 WL 4846548, at *1 ("To the extent that Comcast argues the *McGill* rule is preempted by the [FAA], *McGill* itself explains why it is not.").

Moreover, the statute relied on by the *McGill* court, California Civil Code § 3513, is applied to invalidate private waivers of public rights in all sorts of contracts. *See, e.g.*, *League of Residential Neighborhood Advocates v. City of Los Angeles*, 486 F.3d 1052, 1057 (9th Cir. 2007) (citing § 3513 as a basis for invalidating a settlement agreement that violated zoning laws); *Coker v. JPMorgan Chase Bank, NA*, 364 P.3d 176, 188 (Cal. 2016) (citing § 3513 to invalidate agreement holding borrower responsible for balance of mortgage loan); *In re Marriage of Fell*, 64 Cal. Rptr. 2d 522 (Cal. Ct. App. 1997) (citing § 3513 to invalidate marriage dissolution and settlement agreement); *Mary R. v. B. & R. Corp.*, 196 Cal. Rptr.

871 (Cal. Ct. App. 1983) (citing § 3513 to invalidate a stipulated confidentiality order between a physician and patient he allegedly molested); *see also Little v. Auto Stiegler, Inc.*, 63 P.3d 979, 989 (Cal. 2003) (stating that one "long-standing ground for refusing to enforce a contractual term is that it would force a party to forgo unwaivable public rights"). Thus, the *McGill* court was clear that a pre-dispute waiver of the right to seek public injunctive relief would not pass muster regardless of whether it was inserted in an arbitration provision or another contract provision. *See McGill*, 393 P.3d at 94. Accordingly, the *McGill* rule is a generally applicable contract defense under the FAA and is not preempted.

Several district courts, including this one, have aptly followed *McGill*, agreeing that *McGill* is not preempted because it is a generally applicable contract defense that is not hostile to arbitration and does not interfere with the fundamental attributes of arbitration. *See Roberts*, 2018 WL 1317346 at *6-7; *see also McArdle*, 2017 WL 4354998, at *3-4; *Adkins*, 2018 WL 4846548, at *1; *Tillage* (Dkt. No. 37); *Blair*, 2017 WL 4805577, at *4-5. *Roberts and McArdle* relied primarily on *Sakkab*. *See Roberts*, 2018 WL 1317346 at *6-7 (citing *Sakkab*); *McArdle*, 2017 WL 4354998, at *3-4 (same). The Court should not depart from its well-reasoned opinion in *Roberts*.

Importantly, the FAA does not require the enforcement of otherwise unenforceable contract provisions simply because they have been inserted into an arbitration provision. *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 236-37 (2013) (stating that the FAA does not require the enforcement of agreements that "forbid[] the assertion of certain statutory rights" or "eliminat[e] . . . [the] right to pursue [a] statutory remedy"). And the *McGill* rule, which targets the waiver of California statutory remedies, is exactly the kind of rule that the Supreme Court has recognized is not preempted by the FAA. *See id*.

### 2. *McGill* Does Not Interfere with The Fundamental Attributes of Arbitration.

Nor does the *McGill* rule conflict with the fundamental attributes of arbitration, as USAA incorrectly argues. *Sakkab*, 803 F.3d at 434 (the FAA preempts generally applicable state contract defenses *only* when they "interfere with the fundamental attributes of arbitration," such as informality,

speed, and cost-effectiveness.); *Roberts*, 2018 WL 1317346, at *6 (claims for public injunctive relief do not interfere with fundamental attributes of arbitration).

First, USAA attempts to liken public injunctive relief to a "nonclass class" action to support its argument that the *McGill* rule interferes with the fundamental attributes of arbitration by transforming arbitration into a "a much more complex and expensive proposition." Mot. at 14. However, the fact that, as USAA emphasizes, public injunctive relief proceedings involve consideration of the public, not just the individual party to arbitration, does not on its own increase the complexities or expenses in a way that fundamentally transforms arbitration into a "nonclass class" action. Indeed, public injunctive proceedings share none of the complexities and expenses of class action proceedings, which the Supreme Court concluded would interfere with the fundamental attributes of arbitration. *See Concepcion*, 563 U.S. at 348-51. This is because claims for public injunctive relief do not require any of the formal Rule 23 procedures (e.g., class certification, notice, and opt-out rights). *McGill*, 393 P.3d at 96-97; *cf. Concepcion*, 563 U.S. at 348-50 (finding that class-wide arbitration would implicate formal Rule 23 procedures that would "sacrifice[] the principal advantage of arbitration—its informality"; required protection of the due process rights of absent parties who would be bound by a judgment; and increased risks to defendants). Nor do claims for public injunctive relief implicate the due process rights of absent individuals. Finally, USAA does not argue, nor could it, that arbitration of public injunctive relief would increase any risks to defendants.

USAA further warns that arbitrating public injunctive relief involves various complexities but fails entirely to show how those complexities, to the extent they actually exist, interfere with the fundamental attributes of arbitration. Mot at 14-18. As backdrop, and as the Ninth Circuit explained in *Sakkab*, whether a law or rule interferes with the "fundamental attributes of arbitration," turns on whether the law or rule "*could* . . . be applied to arbitration agreements without interfering with parties' freedom to select informal procedures." 803 F.3d at 435 (emphasis added); *see also Concepcion*, 563 U.S. at 351 ("States cannot *require* a procedure that is inconsistent with the FAA . . . ." (emphasis added)). Here, USAA contends claims for public injunctive relief would involve consideration of the rights and interests of members of the public, not just parties to the action, and that the interests of the named

plaintiff are implicated only in an "incidental way." Mot. at 14, 17. But this Court already rejected this argument in *Roberts*, rightfully pointing out that any "evidence [with respect to a claim for public injunctive relief] will likely be particularly straightforward . . . [and that] crafting a public injunction as relief, assuming Plaintiffs were to prevail, would [not] involve any particular complexities. There is nothing inherently complex that *would interfere with fundamental attributes of arbitration* should a public injunction claim be sent to arbitration." 2018 WL 1317346, at *7 (emphasis added).

Finally, like AT&T in *Roberts*, USAA argues that because Private Attorney General Act ("PAGA") claims are on behalf of the state—unlike claims for injunctive relief—a "public injunction claim is significantly more incompatible with bilateral arbitration" than a PAGA claim. Mot. at 17. In making this argument, USAA attempts to distinguish public injunctive relief and PAGA claims so as to avoid the well-reasoned conclusion of this Court in *Roberts*, that "[i]f the California state law rule . . . prohibiting waiver of representative PAGA claims (in any forum) does not interfere with the fundamental attributes of arbitration [as concluded by the Ninth Circuit in *Sakkab*], then it is difficult to see how the California state law rule (*McGill*) prohibiting waiver of public injunctive relief (in any forum) could. 2018 WL 1317346, at *6. In reaching this conclusion, the Court noted that AT&T "has failed to explain why this distinction is material to the question of preemption. In both PAGA and public injunction cases, relief is sought for parties beyond the individual plaintiff. That fact alone does not require preemption." *Id.* at *7. Like AT&T, USAA fails to demonstrate any material distinction between PAGA and public injunctive relief claims that renders this Court's analysis in *Roberts* inapplicable. In short, USAA presents no reason to conclude that the *McGill* rule barring public injunctive relief waivers interferes with the fundamental attributes of arbitration.

As a last line of defense, USAA makes much of the fact that this Court's decision in *Roberts* pre-dates the Supreme Court's decision in *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) and asks this Court not only to abandon its well-reasoned analysis in *Roberts*, but also to conclude that the Ninth Circuit's decision in *Sakkab* was "wrongly decided." Mot. at 15. But the *McGill* rule is entirely consistent with *Epic*'s ruling because *Epic* did not change the FAA preemption analysis applied by this Court in *Roberts* and by the Ninth Circuit in *Sakkab*.

Plaintiffs in *Epic* argued that the FAA's savings clause permits courts not to enforce an arbitration agreement that includes a class action waiver, because such a waiver violates the National Labor Relations Act ("NLRA"). The Supreme Court rejected plaintiffs' characterization of the NLRA and concluded that plaintiffs' challenge to the individualized nature of arbitration proceedings interfered with one of arbitration's fundamental attributes, which is its "traditionally individualized and informal nature." *Epic*, 138 S. Ct. 1612, 1622. In other words, *Epic* simply reaffirmed the traditional FAA preemption analysis that "courts may not allow a contract defense to reshape traditional individualized arbitration." *Id.* at 1623.

Nor would *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019) compel this Court to find that the *McGill* rule is preempted, as USAA argues. Mot. at 16-17. The Supreme Court in *Lamps Plus* only held that courts cannot infer consent to class arbitration—as opposed to arbitration on an individual basis—without a clear contractual basis for determining that the parties agreed to address their disputes in this manner. *Lamps Plus*, 139 S. Ct. at 1419. In reaching this conclusion, the Court, like it did in *Epic*, simply affirmed a traditional FAA preemption analysis and concluded that "[b]ecause class arbitration fundamentally changes the nature of the traditional individualized arbitration . . . a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 1412 (emphasis in original; internal quotation marks omitted). Thus, like with *Epic*'s ruling, the *McGill* rule is consistent with *Lamps Plus*'s ruling because *Lamps Plus* did not change the FAA preemption analysis.

Thus, both the Ninth Circuit's decision in *Sakkab*, and this Court's decision in *Roberts* are consistent with the Supreme Court's holding in *Epic* and *Lamps Plus*. In *Sakkab*, the Ninth Circuit concluded that a rule prohibiting waiver of PAGA claims did not interfere with the fundamental attributes of arbitration because with PAGA claims, unlike with class actions, the parties are free to select informal arbitration procedures. 803 F.3d at 435. Likewise, this Court, relying on *Sakkab*, concluded that claims for public injunctive relief do not interfere with the fundamental attributes of arbitration because parties are free to adopt the informal procedures available in arbitration to arbitrate such claims. *Roberts*, 2018 WL 1317346, at *6. Further, the Ninth Circuit acknowledged that PAGA

claims can be complex, but unlike class actions, any complexity "flows from the substance of the claim itself, rather than any procedures *required* to adjudicate it (as with class actions)." *Sakkab*, 803 F.3d at 438 (emphasis added). This Court, relying once again on *Sakkab*, concluded that claims for public injunctive relief, like PAGA claims, are also not necessarily procedurally complex like a class action. *Roberts*, 2018 WL 1317346, at *7. The analysis of this Court in *Roberts* and the Ninth Circuit in *Sakkab* that arbitrating claims for public injunctive relief and PAGA claims, respectively, do not require any procedures that fundamentally interfere with the attributes of arbitration, is entirely consistent with *Epic* and *Lamps Plus*.

Nor should the observations of one court in the Southern District of California on *Epic* and *Sakkab* compel this Court to depart from its holding in *Roberts* and that of numerous other courts. *See, e.g., McArdle*, 2017 WL 4354998, at *3-4; *Adkins*, 2018 WL 4846548, at *1; *Tillage* (Dkt. No. 37); *Blair*, 2017 WL 4805577, at *4-5. Further, USAA notes that the court in *McGovern v. U.S. Bank, N.A.*, No. 18-CV-1794, 2019 WL 329537 (S.D. Cal. Jan. 25, 2019) found it "difficult to reconcile" *Sakkab* with *Epic*. Mot. at 15 (quoting *McGovern*, 2019 WL 329537, at *8 n.5). But the court in *McGovern* merely noted that it disagreed with the *Sakkab* court's conclusion that the rule barring PAGA waivers is a generally applicable contract defense.[2] 2019 WL 329537, at *8 n.5. Nowhere in *McGovern*, as USAA seems to imply, did the court conclude that *Sakkab* was inconsistent with *Epic* by failing to analyze whether PAGA claims interfere with the fundamental attributes of arbitration. As such, USAA fails to provide any reason for this Court to revisit its reasoning in *Roberts*, let alone depart from it a year later.

### iii. Eiess Seeks Public Injunctive Relief.

#### 1. Eiess Seeks to Enjoin USAA from Misrepresenting Its Fee Practices to the Detriment of the Public.

Eiess seeks public injunctive relief in this action, triggering the application of the *McGill* rule. On behalf of herself, the putative classes, and the public, Eiess seeks to enjoin USAA from making material omissions and misrepresentations to the public as to its multiple NSF Fee policy, which is essential to eradicating USAA's deceptive scheme. Compl. ¶¶ 70-73.  As the Complaint alleges:

> Plaintiff seeks injunctive relief on behalf of the general public in order to prevent USAA from continuing to make material misrepresentations and omissions in publicly

---

[2] And, as explained above, numerous courts agree with this Court that *McGill* is a generally applicable contract defense. *McGovern*, with respect to this issue, and its entire preemption analysis, is an outlier.

available account documents, misrepresentations and omissions which prevent all California consumers from accessing truthful and transparent information regarding USAA's practices.

*Id.* ¶ 10.

The misrepresentations are that USAA misleadingly and deceptively misrepresents and omits material facts pertaining to its NSF Fee practices in publicly-available documents: its Deposit Agreement, Fee Schedule, and Online Banking Agreement, which are all available online and in print to current and prospective accountholders. *Id.* ¶ 7. "Consumers, and the general public, rely on these documents in making important financial decisions regarding to whom they would like to entrust their money." *Id.* Thus, Eiess seeks public injunction relief:

> [The injunctive relief sought] will protect the public from USAA's deceitful marketing practices which lure customers in by misunderstanding the amount and frequency it assesses NSF Fees on a single transaction. It will prevent USAA from distorting the marketplace by representing that it charges fewer fees than it actually does. It will also serve as a deterrent to other bank that may consider unlawfully charging NSF Fees.

*Id.* ¶ 72.

Because this injunctive relief would benefit the public at large, USAA is wrong that Eiess is not seeking public injunctive relief.

The relief sought is important to the public, as "[f]ees are one of the most important factors that consumers' take into account when deciding whether to open a checking account, and which financial institution to bank with." *Id.* ¶ 71. The importance of the documents where the misrepresentations are made to the public is clear:

> Bank accounts are an essential financial product, used by 9 in 10 American households, and need to be safe and transparent. Account agreements and fee schedules provide customers with account costs, terms, and conditions. Among the largest U.S. banks, however, the median length of checking account disclosure documents is 40 pages, and the information is presented in varied formats with inconsistent wording, making it difficult for consumers to easily find the information they need to comparison shop, avoid overdraft and other fees, and manage their money.

*Id.* ¶ 8 (quoting The Pew Trusts, "The Benefits of Uniform Checking Account Disclosures").

The importance of a major bank misleading the public transcends the immediate effect of obtaining fees from those it deceives, as "[t]he public has the right to a transparent marketplace in which banks are open and honest about the number, nature, and amount of fees they charge, and the

circumstances under which those fees are assessed." Compl. ¶ 71. USAA is a major bank with a strong national presence, including in California. It is disingenuous (and contrary to the Complaint's allegations) for USAA to suggest that its wrongdoing is isolated to its effect on its members and has no impact on future customers or the general public. *See id.* ¶ 72 (the injunctive relief sought will "prevent USAA from distorting the marketplace by representing that it charges fewer fees than it actually does."). Even if USAA's impact was somehow quarantined to military members, veterans, and their families, the idea that this massive community of people (and the businesses that compete for them) does not constitute the public is dubious at best.

For these reasons, USAA is simply wrong to argue that the "primary purpose" of Eiess's suit is to benefit a narrow class of people, regardless of whether Eiess seeks additional relief. The allegations regarding the effect of USAA's fee practices on the general public are not only comprehensively and prominently pled in the Complaint, Eiess is indisputably seeking injunctive relief that would end these practices. In sum, because Eiess seeks to stop the widespread dissemination of misleading marketing in account documents, which effects the general public, the injunctions sought are "public injunctive relief" as defined by *McGill*, 393 P.3d at 90.

### 2. The Weight of Authority Favors Eiess's Construction of Public Injunctive Relief.

Most California courts that have looked at "public injunctive relief" as pled by Eiess have agreed that the relief sought here would qualify:

> [I]t is evident that the relief being sought is not limited to Plaintiffs individually, but rather, extends to members of the public impacted by AmeriCredit's allegedly unfair business practices. Indeed, under AmeriCredit's reasoning, a UCL claim for injunctive relief would never be considered an injunction for the benefit of the public because the scope of relief would always be defined by the class. The Court is aware of no authority to support such an expansive proposition of law.

*Cardenas v. AmeriCredit Fin. Servs.*, No. C 09-04978, 2010 WL 3619851, at *9 (N.D. Cal. Sep. 13, 2010) (plaintiffs' request for an injunction preventing defendant from issuing defective notices to consumers constituted claim for public injunctive relief); *see also Blair*, 2017 WL 4805577 at *3 (N.D. Cal. Oct. 3, 2017) (claims under FAL and CLRA sought public injunctive relief). Another California court has concluded that it was irrelevant whether public injunctive relief was sought because "the Arb. Clause prohibits public injunctive relief and therefore violates the law" and was therefore unenforceable.

1   *Wallace v. Wells Fargo Bank, N.A.* (Cal. Sup. Ct. Aug. 7, 2018) No. 2017-1-CV-31777, at *4-5, attached
2   hereto as Exhibit A to the Declaration of Andrea Gold.

3          Indeed, consistent with the public purpose of the UCL and CLRA, California courts generally
4   interpret claims for public injunctive relief broadly. *See, e.g., Ferguson v. Corinthian Colleges, SACV 11–*
5   *0127 DOC*, 2012 WL 27622, at *4 (C.D. Cal. Jan. 5, 2012) (plaintiff's claims seeking "to prevent
6   Defendants from deceiving vulnerable consumers … about what it means to enroll at one of
7   Defendants' institutions, namely, the true cost of attendance …" were claims for public injunctive
8   relief, in part because "these claims, by definition, seek to protect future students"); *Coast Plaza Doctors*
9   *Hosp. v. Blue Cross of California*, 83 Cal. App. 4th 677, 691–92 (2000) *as modified* (Sept. 7, 2000) ("a claim
10  for injunctive relief under [the UCL] is brought by a plaintiff acting in the capacity as a private attorney
11  general … 'Coast Plaza seeks an injunction prohibiting Blue Cross from providing reimbursement
12  rates at unreasonable and anti-competitive levels.' Such relief would certainly constitute a public
13  injunctive remedy…"). In fact, many types of claims can support a request for public injunctive relief.
14  *See, e.g., Cheverez v. Plains All Am. Pipeline, LP*, No. CV15-4113, 2016 WL 4942328, at *4 (C.D. Cal. Feb.
15  25, 2016) ("Plaintiffs also request other appropriate injunctive relief including public injunctive relief.
16  For example, Plaintiffs request an order requiring Defendants to restore fisheries impacted by the spill
17  and … an order requiring Defendants to operate their pipelines in such a way to ensure no further
18  spills and resulting loss of jobs").

19         Crucially, where USAA's authority is contrary to *McGill*'s holdings (and the caselaw on which
20  *McGill* is based) in defining public injunctive relief, the California Supreme Court's interpretation of its
21  own statute must control. *See Hemmings*, 285 F.3d at 1203 ("In interpreting state law, federal courts are
22  bound by the pronouncements of the state's highest court."). Indeed, the California Supreme Court
23  was clear in *McGill* that consumer protection actions to stop wrongful actions like USAA's do indeed
24  seek public injunctive relief. *See McGill*, 393 P.3d at 91 ("[W]e disagree with Citibank that McGill has
25  failed adequately to . . . explain how the public at large would benefit from [the injunctive] relief.").

26         USAA relies on *Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV 17-2477, 2018 WL 4726042
27  (C.D. Cal. Sept. 18, 2018); *Rappley v. Portfolio Recovery Assocs., LLC*, No. EDCV 17-108, 2017 WL

28

3835259 (C.D. Cal. Aug. 24, 2017); *Wright v. Sirius XM Radio Inc.*, No. SACV 16–01688, 2017 WL 4676580 (C.D. Cal. June 1, 2017); *McGovern*, 2019 WL 329537, at *6-9; and *Bell-Sparrow v. SFG*Proschoicebeauty*, No. 18-cv-06707, 2019 WL1201835, at *5 n.9 (N.D. Cal. Mar. 14, 2019), which are readily distinguishable, unpublished, and non-binding opinions from other district courts. In *Wright*, the alleged unfair practices solely affected *existing* Sirius XM customers and the complaint only tangentially made vague, generalized allegations of misrepresentation. 2017 WL 4676580 at *27-28. In contrast, here, the Complaint clearly articulates how USAA's deceptive practices affect both existing customers *and* the public at large, as well as the marketplace. By contrast, in *Johnson*, the court found that "the only individuals who would theoretically benefit from an injunction: were those under contract, not the 'public at large.'" 2018 WL 4726042. at *7. Here, Eiess's injunctive relief claim is based on deceptions made to the general public, and the Complaint alleges that the injunctive relief requested is for the benefit of the general public. Further, unlike here, in *Johnson*, "not one of the alleged classes includes future JPMorgan customers who will incur such fees as a result of the allegedly unlawful practices." *Id.* at *7.  In *Rappley*, 2017 WL 3835259, at *6, the plaintiff sought relief on behalf of a specific subgroup whose debt had already been purchased by defendant and were harmed by unlawful debt collection practices, rather than here, where the injunctive relief is sought to keep USAA from deceiving the general public prospectively.  Finally, in *Bell-Sparrow*, 2019 WL 1201835, at *5 n.9, the plaintiff, unlike here, did not even plead injunctive relief of *any kind*, let alone public injunctive relief.

Finally, respectfully, Eiess contends the *McGovern* decision is incorrect insofar as it contradicts *McGill*, which is binding. 393 P.3d 85, 89-91.[3]

Thus, while USAA would like to shirk accountability for its actions and the resulting negative effect on accountholders, the banking industry, and the public at large by hiding behind its Arb.

---

[3] In addition to holding that *McGill* is preempted, the *McGovern* decision questioned, in *dicta*, whether a plaintiff had Article III standing to seek redress for the public. 2019 WL 329537, at *5. This conclusion is defied by the very existence of a Fed. R. Civ. P. 23(b)(2) class. Furthermore, the Ninth Circuit allows a plaintiff standing to seek public injunctive relief provided that she was indeed harmed, suggesting *McGovern* is an extreme outlier.  *See, e.g. Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 969-70 (9th Cir. 2018) (resolving a district court split on the issue of Article III standing to pursue injunctive relief under California's consumer protection laws).

Clause, California law is clear that consumer protection actions to stop such wrongful actions do indeed seek public injunctive relief. *See McGill*, 393 P.3d at 91 ("we disagree with Citibank that McGill has failed adequately to . . . explain how the public at large would benefit from [the injunctive] relief."). Therefore, this Court should conclude, following the California Supreme Court and the several decisions in this District, that Eiess seeks public injunctive relief.

### B.    The Court should not compel arbitration of liability.

As noted above, under *McGill*, any contract that waives the right to seek public injunctive relief is unenforceable. *See supra* Section III(B)(i)(1). Accordingly, per *McGill*, the Arb. Clause here is unenforceable. USAA nonetheless relies on its unenforceable Arb. Clause to argue that its liability must be determined in arbitration while this Court addresses Eiess's entitlement to public injunctive relief. USAA points to the absence of "poison pill" language as support for its argument. But USAA ignores that "[t]he procedure to be followed here is dictated . . . by the specific procedures contracted to by the parties in the arbitration agreement at issue here." *McArdle*, 2017 WL 4354998, at *4. Here, there is no language in the Arb. Clause permitting severability of any unenforceable portion.

Nor does language regarding severability, in a wholly separate section of the Agreement, help USAA. In an entirely separate section of the Agreement, USAA states that "a determination that any part of this Agreement is invalid or unenforceable will not affect the remainder of this Agreement." Compl., Ex. A at 33. But all this language means is that where, as here, the Arb. Clause is unenforceable, the remainder of the Deposit Agreement will remain in effect. If USAA, as a large, sophisticated company, intended for unenforceable portions of the Arb. Clause to be severable, they would have included such language. Given these reasons, the Court should find that the Arb. Clause is unenforceable in its entirety.

### C.    Plaintiff's Claims Are Not Governed by Texas Law.

#### i.    The Principle Underlying *McGill* is Fundamental Policy of the State of California and Cannot Be Waived by Choice of Law Provisions.

Finally, Eiess's argument that USAA's Arb. Clause is invalid under *McGill* remains true, notwithstanding the Texas choice of law clause. As explained, *supra*, *McGill* establishes a plaintiff's right to bring an action for public injunctive relief in *some* forum, irrespective of contractual provisions

purportedly waiving a consumer's right to seek such relief. *McGill* represents a fundamental policy of California which supersedes any contrary choice of law provision.

In *Nedlloyd*, the Supreme Court of California outlined the analysis a court must undergo in deciding whether to enforce a choice of law provision in an agreement. *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 466 (1992). First, a court must determine either: "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Id.* If neither of these tests are met, the court need not enforce the parties' choice of law. *Id.* However, if either test is met, the court must determine whether the chosen state's law is contrary to a fundamental policy of California. *Id.* If there is a fundamental conflict with California law, the court must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue, and if so, the provision will not be enforced." *Id.*

Here, because USAA has its headquarters in Texas, the first test is likely met. Compl. ¶ 14. Nonetheless, the choice of law clause conflicts with a fundamental policy of the state of California if it seeks to apply Texas law, rather than California law, to the question of whether USAA may waive the right to seek public injunctive relief in any forum. As discussed, *supra*, in *McGill*, the Supreme Court of California unanimously held that a contract barring a consumer from seeking public injunctive relief in any forum is unenforceable. The *McGill* court relied on Cal. Civil Code § 3513, which provides that "a law established for a public reason cannot be contravened by private agreement." *McGill,* 393 P.3d at 94 (citing *Little,* 63 P.3d at 989 ("long-standing ground for refusing to enforce a contractual term is that it would force a party to forgo unwaivable public rights."); *see also id.* at 95 (citing *Mitsubishi Motors Corp.* 473 U.S. 614, 637, n.19 (1985) ("[I]n the event the [arbitration] and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy."). The principle enunciated in *McGill*—that a waiver of public injunctive relief in any forum contravenes the public policy of the state of California—is itself a fundamental policy of the state of California. *See McGill,* 393 P.3d at 86 (Waiver of public injunctive relief "is contrary to California public policy and is

thus unenforceable under California law."); Cal. Civ. Code § 1751 ("Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void."); *Am. Online, Inc. v. Super. Ct.*, 90 Cal. App. 4th 1, 18, 108 Cal. Rptr. 2d 699, 712 (2001) (noting the fundamental policies reflected in both the UCL and CLRA)*; Aral v. Earthlink, Inc.*, 36 Cal. Rptr. 3d 229, 244(2005) *abrogated on other grounds by Concepcion.* USAA concedes, Texas has no similar *McGill*-type policy or case law prohibiting the waiver of public injunctive relief in all fora. *See* Mot. at 8 n.5. Thus, application of Texas law to analyze the enforceability of USAA's waiver of public injunctive relief would violate "multiple fundamental policies of the state of California aimed at protecting California consumers." *See Lloyd v. Navy Fed. Credit Union*, No, No. 17-cv-1280, 2018 WL 1757609, at *5 (S.D. Cal. Apr. 12, 2018).

Finally, weighing California's substantial interest in enforcing its "long-standing" policy of refusing to permit contractual terms eliminating waivable public rights against Texas's minimal, if any, interest in applying its law to a California dispute between a California consumer on behalf of a California class and a Texas bank operating nationwide, California decidedly has a materially greater interest in applying its laws. Indeed, as the court noted in *Lloyd*, "courts have determined that California has a 'stronger interest' in protecting *its* consumers through its chosen statutory scheme for doing so, which 'permits its injured consumers . . . to seek . . . injunctive relief in order to deter and prevent future harm to other consumers located in the state." 2018 WL 1757609, at *6 (citing *Van Slyke v. Capital One Bank*, 503 F.Supp.2d 1353, at 1361 (N.D. Cal. 2007) ("California's own anti-deception statutes take priority in a California forum" in the context of "a Virginia bank operating in California and nationwide" and "California consumers" allegedly scammed). Indeed, as held in *Oestreicher v. Alienware Corp.*, California has a materially greater interest in the action because "[t]he state where a party to the contract is domiciled has an obvious interest in the application of its law protecting its citizens against the unfair use of superior bargaining power. 502 F. Supp. 2d 1061, 1068 (N.D. Cal. 2007), *aff'd*, 322 F. App'x 489 (9th Cir. 2009).[4] As such, this Court should apply *McGill* in

---

[4] Contrary to USAA's argument, the facts necessary to determine California's interest in this action are evident from the face of the Complaint. Notably, Plaintiff alleges she is a California citizen (Compl. ¶ 13), she brings her claims on behalf of a California class (*Id.* ¶ 58), regarding transactions that occurred in California (*Id.* ¶ 60).

analyzing the enforceability of USAA's arbitration provision, notwithstanding the Texas choice of law clause.

        **ii.**      **If the Court Applies Texas Law, the Arbitration Provision is Illusory and Unenforceable.**

Moreover, even if the Court credits USAA's argument that Texas law applies,[5] the Arb. Clause is unenforceable for a separate reason: it is illusory. The Arb. Clause is a purportedly bilateral agreement where one party may revoke its promises at any time, and thus Eiess has not actually entered into any binding agreement at all. Specifically, USAA reserves the unilateral right to change the Agreement at any time, with or without notice. Further, the Agreement specifies that any amended Agreement "supersedes all prior versions" and therefore may apply retroactively:

> **Changes to Agreement**
> **FSB may change this Agreement at any time, whether by adding new terms and conditions, or deleting or amending existing ones.** FSB will generally send advance notice of an adverse change by mailing, e-mailing, or delivering a notice, a statement message, or an amended Agreement to the last address (location or e-mail) on file for you. **In some cases, FSB may amend the Agreement without prior notice by posting information on usaa.com or otherwise making it available to you.** If you do not agree with a change, you may close your account. However, if you continue to use your account or keep it open, you accept and agree to the change. **The current version of this Agreement supersedes all prior versions and contains the terms governing your account.**

Compl., Ex. A at 7 (emphasis added).

Texas law on illusoriness is clear: an arbitration clause is illusory when "one party can 'avoid its promise to arbitrate by amending the provision or terminating it altogether.'" *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012) (citing *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010)); *In re Halliburton Co.*, 80 S.W.3d 566, 569-70 (Tex. 2002); *Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 86 (1st Cir. 2018).

The First Circuit recently applied Texas law to invalidate an arbitration provision between The Container Store and consumers. *The Container Store,* 904 F.3d at 86-88. In so doing, the First Circuit explained that, in Texas, a unilateral modification provision, like USAA's provision cited above, which

---

[5] The Court is free to apply Texas law to interpret the contract, and California law to Eiess's substantive statutory claims. Under California choice of law rules, "[A] separate conflict of laws inquiry must be made with respect to each issue in the case." *Wash. Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 920 (2001) (internal citation omitted); *accord S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981).

allows the drafter to unilaterally modify the arbitration provision, renders the arbitration provision illusory for lack of consideration: "[W]here one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party has the right to change the terms of the agreement to avoid arbitration, then the agreement was illusory from the outset." *Id.* (internal citations omitted).

The dispositive question is whether USAA's unilateral modification provision specifically prevents retroactive modification of the arbitration agreement, like through a "savings clause." *See Carey*, 669 F.3d at 206-07. Silence is insufficient to prevent a unilateral modification provision from applying retroactively. *See id.* ("[S]ilence about the possible retroactive application of amendments to the arbitration policy [is] interpreted to allow amendments to apply retroactively.").

A comparison between USAA's modification provision, *The Container Store*'s modification provision, the *Halliburton* modification provision, and the *Carey* modification provision, is illustrative. In *The Container Store*, the First Circuit evaluated a contract which permitted the Container Store to unilaterally modify any term, merely by posting the change in terms to its website. The agreement specified that continued use of the website's loyalty program constituted acceptance of the revised terms. In invalidating the provision, the First Circuit held, based on the change-in-terms clause, that The Container Store unilaterally retains the right to alter the terms of the [contract], including the arbitration provision, 'at any time.' Pursuant to Texas law, this is a text-book definition of illusory." *The Container Store,* 904 F.3d at 86–87.

Conversely, the arbitration clause in *Halliburton* was *not* illusory because it had a "savings clause": the modification provision specified that "no amendment shall apply to a Dispute of which [the defendant] had actual notice on the date of amendment" and that the agreement could not be terminated as to "Disputes which arose prior to the date of termination." 80 S.W.3d at 569-70. The clause in *The Container Store*, and the clause in *Carey*, in contrast, did not have an express "savings clause" that prevented the defendant from retroactively amending or eliminating its obligation to arbitrate, rendering the agreement illusory. 669 F.3d at 205-06; 904 F.3d 70, 86.

Here, USAA reserves the unilateral right to change the Agreement at any time, with or without notice. Further, the Agreement specifies that any amended Agreement "supersedes all prior versions"

1    and therefore may apply retroactively. Further, the Agreement applies to "Covered Claims" which are

2    defined as "*any pre-existing*, present, or future *dispute, claim or controversy* that in any way arises

3    out of or relates to . . . [your account]." Compl, Ex. A at 33. As in *Carey* and *The Container Store*,

4    USAA's provision does not limit USAA's ability to retroactively alter the arbitration provision. 669

5    F.3d at 206-08; 904 F.3d 70, 86-87. It in fact does the opposite by specifically stating that the

6    Agreement applies retroactively to pre-existing disputes—as clear an indication as any that future

7    Agreements may apply retroactively as well. And while other terms in a contract can provide

8    consideration for an arbitration agreement, *see In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, at 607

9    (Tex. 2005), here there is no independent consideration supporting the Arb. Clause because the

10   modification provision allows USAA to modify the entire agreement. The Arb. Clause is therefore

11   illusory and unenforceable under Texas law.

12          The arguments that USAA may raise in an attempt to save the Arb. Clause fail. First, a

13   consumer's ability to close an account does not render the Arb. Clause non-illusory. Relying on

14   *Halliburton*, the Fifth Circuit in *Carey* rejected a similar argument that notice plus acceptance of new

15   terms made an agreement to arbitrate non-illusory. 669 F.3d at 207. Put simply, a plaintiff's ability to

16   close their bank account does not "prevent [Defendant] from retroactively eliminating its arbitration

17   policy, which is the critical inquiry for determining whether an agreement is illusory." *Id*; *see also Weekley*

18   *Homes, L.P. v. Rao*, 336 S.W.3d 413, 421 (Tex. App. 2011) ("[W]e cannot agree with the [defendant's]

19   that . . . the promise to arbitrate is not illusory because the [contract] states that employees will receive

20   notification of any changes."); *Torres v. S.G.E. Mgmt., L.L.C.*, 397 F. App'x 63, 66 (5th Cir. 2010)

21   (notice did not save illusory agreement); *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008)

22   (same).

23          Second, because the unilateral modification provision goes to contract formation, USAA

24   cannot attempt to "sever" the Arb. Clause from the Agreement. As the First Circuit explained in *The*

25   *Container Store*, the court would need to "reviv[e] a contract we have found was never formed for its

26   lack of consideration, omitting the change-in-term clause that was fatal to the contract's proper

27

28

formation, to therefore conclude a contract was formed . . . would be an inappropriate exercise." *The Container Store,* 904 F.3d at 87. Severance is not an option here for the same reason.

Finally, simply because Eiess pled a breach of contract claim does not mean she concedes the contract is enforceable. Eiess also brings an unjust enrichment claim. Under Fed. R. Civ. P. 8(d), Eiess is of course permitted to argue positions in the alternative.

For the reasons set forth above, Eiess respectfully requests that the Court deny USAA's Motion.

Dated: June 6, 2019

Respectfully submitted,

*/s/ Andrea Gold*
Andrea Gold (*pro hac vice*)
Hassan A. Zavareei (CA Bar No. 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 973-0900
Fax: (202) 973-0950
*agold@tzlegal.com*
*hzavareei@tzlegal.com*

Annick M. Persinger (CA Bar No. 272996)
Tanya S. Koshy (CA Bar. No. 277095)
**TYCKO & ZAVAREEI LLP**
The Tower Building
1970 Broadway – Suite 1070
Oakland, CA 94612
Tel: (510) 254-6808
Fax: (510) 210-0571
*apersinger@tzlegal.com*
*tkoshy@tzlegal.com*

Todd D. Carpenter (CA Bar No. 234464)
**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel: (619) 762-1900
*tcarpenter@carlsonlynch.com*

Jeffrey D. Kaliel (CA Bar No. 238293)
Sophia G. Gold (CA Bar No. 307971)
**KALIEL PLLC**

1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
Tel: (202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielpllc.com*

Jeff Ostrow (*pro hac vice to be filed*)
Jonathan M. Streisfeld (*pro hac vice to be filed*)
**KOPELOWITZ OSTROW FERGUSONWEISELBERG GILBERT**
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
Fax: (954) 525-4300
*ostrow@kolawyers.com*
*streisfeld@kolawyers.com*

*Attorneys for Plaintiff and the Putative Classes*